STATE OF NEBRASKA, EX REL. CARL C. WRIGHT, RELATOR,
v. EZRA P. SAVAGE, GOVERNOR, RESPONDENT.*

FILED MAY 21, 1902. No. 12,542.

1. **Right of Courts:** JUDICIAL QUESTIONS: CONSTITUTION. The right of the courts to determine all judicial questions, whenever or however they may arise, is given by the constitution in explicit terms and is indisputable.

2. **Right of Executive Officers.** But equally clear and incontestable is the right of the executive officers named in the constitution to exercise all powers properly belonging to the executive department.

3. **Judicial Authority:** JUDGMENT: COERCIVE PROCESS. Considering the matter theoretically, and leaving practical results and past adjudications entirely out of view, it would seem that the farthest limit of judicial authority in mandamus proceedings against officers of the executive department, is to hear and determine; to give judgment, but not to enforce it by coercive process.

4. **Exemption From Mandamus:** OFFICIAL RANK. The principle of exemption from mandamus is grounded upon a distinct constitutional inhibition (Constitution, art. 2, sec. 1), and does not at all depend upon official rank. Whether the writ of mandamus should be granted or refused has been made to depend, in every case decided by this court, upon the character of the act in question and not upon the office of the respondent.

5. **Judiciary:** MANDAMUS TO BRANCH OF GOVERNMENT. The theory that the judiciary, in issuing a mandamus to a member of the executive branch of the government, is thereby indirectly, and in violation of the constitution, exercising power properly belonging to the executive department, has been repudiated by this court in a long line of decisions.

6. **A Mere Ministerial Duty.** The established doctrine in this state is that when a law, in positive terms, enjoins upon the governor, or other officer of the executive department, a mere ministerial duty, leaving him no choice or discretion in regard to the matter,—no judgment to exercise as to whether he will or will not act,—the writ of mandamus may issue, and its issuance is an appropriate exercise of judicial power.

7. **Res Judicata:** LITIGANTS: PRIVITY: SEALED AND CLOSED QUESTION. The doctrine of *res judicata* is that a question once determined by a judgment on the merits, is forever settled, so far as the litigants and those in privity with them are concerned. The question decided is, while the decision stands, a sealed and closed question.

*Rehearing allowed. See opinion on page 702, *post.*

State v. Savage.

8. **Public Officer:** SUCCESSOR: PRIVITY. A public officer is regarded as being in privity with his predecessor when both derive their authority from the same source.

9. ——: JUDGMENT: SUCCESSOR. A judgment against a public officer in regard to a public right, binds his successor in office.

10. **Thing Adjudicated:** SOVEREIGN: CITIZEN. All litigants are affected by the rule of the thing adjudged; it is equally binding upon the sovereign and the citizen.

ORIGINAL proceeding in mandamus to require the governor to appoint a fire and police commission for the city of Omaha. *Writ denied.* On rehearing, *writ allowed,* but not formally issued. See page 702.

*Frank T. Ransom, William F. Gurley, Carl C. Wright* and *John F. Stout,* for relator:

The respondent in his return to the writ claims that, as he is governor, this court has no jurisdiction over him as such officer in such matters as are involved in this controversy. He claims that as governor he is exempt from mandatory process issuing out of this court, and especially so where the action is one executive in character. Chief Justice Marshall laid down the following rule for a case like this:

It is not by the office of the person to whom the writ is directed, but by the nature of the thing to be done, that the propriety or impropriety of issuing a mandamus is to be determined. *Marbury v. Madison,* 1 Cranch [U. S.], 137.

This rule has been generally accepted, and courts have since held that the judicial department has jurisdiction over the chief executive to enforce the performance of a purely ministerial duty imposed by a legislative act. Without present reference to the assumed exemption of the governor from obedience to the laws of the state, as construed by this tribunal, created and clothed with jurisdiction, by the constitution, we will proceed to examine into the nature of the thing to be done.

The power to appoint, delegated by the law providing

for fire and police commissioners, is not one that inheres in the executive by virtue of any provision of the constitution. It was not necessary to confer that power upon the executive. It could have been conferred upon any of or officer or upon any existing board; or the legislature could have created a board and then have conferred jurisdiction upon it. The thing to be done is not an independent executive act. The legislature conferred the power to appoint. The legislature can take it away. The power to appoint is not conferred by the constitution. either in express terms or by implication. The appointment is purely a ministerial act.

This court has decided that a writ of mandamus can be issued to compel the governor, as member of a canvassing board, to canvass election returns and declare the result of an election. *State v. Thayer*, 31 Nebr., 82. This duty of the governor, as member of a canvassing board, was conferred by a legislative act, as was the appointing power involved in the case at bar. There is no distinction to be drawn between the two acts. As to the power of the legislature to confer such authority at its will, see *State v. Bemis*, 45 Nebr., 731.

The cases where the question has been before the courts are collated in an article in the 3d volume of the Lincoln Law Review, page 335, and also in the majority and minority opinions in *People v. Morton*, 156 N. Y., 136, 41 L. R. A., 231, and in briefs published therewith. We will not attempt to digest the decisions of this court on the question. The rule deduced from *People v. Morton, supra,* is that the sovereignty is in the people. They have delegated the power to rule to three departments. In England the power to govern originally vested in the king. From time to time the king made grants or modified his power to govern until parliament was evolved; and parliament created the judiciary. This distribution of powers is continued with us along with the common law of England. Under the constitution, the executive power of the state corresponds

to the king; the legislature corresponds to parliament; the judicial power is in the courts. In England the power of the king has been divided, a portion being delegated to parliament and a portion to the judiciary; but except as so delegated his power remains the same, and, in our government, has been transmitted to the executive.

But here lies the difference between the English system and our own: In England mandamus, being a high prerogative writ, issued in the king's name, and, consequently, could not run to him or to his derivatives, viz., parliament or the judiciary, except in the case of inferior courts. Surely, the governor possesses no such reserved power or high prerogatives as his Brittanic majesty. Our state government is one of limitations and not of grants. Does the New York court mean to assert that the governor possesses all power not delegated to the other branches of the state government?

*Ed P. Smith*, for respondent:

We have been unable to find any adjudicated case where the relator sought, as against the governor, the relief sought in this case. The provision of our constitution defining the three departments of government and denying to the members of one department the right to exercise any of the powers belonging to either of the others, is a familiar provision. It is to be found in the constitution of nearly all, if not all, the states of the union. Its interpretation has been the subject of much judicial investigation; and, upon the surface, there seems to be some conflict in the decisions. An examination of the cases, however, will show less division of opinion than might at first appear. The conflict arises over the nature of the act sought to be enforced. Where such act is what some of the courts are pleased to call ministerial and not executive in its character, some courts have asserted the right to issue the writ. But where the act is clearly an executive function, we think that the authorities are practically unanimous in holding that his action in the

premises can not be controlled by this court. It is not a lack of jurisdiction over the person that prevents the issuance of the writ, but it is a lack of power or jurisdiction over this officer. *Sutherland v. The Governor*, 29 Mich., 320.

The supreme court of Pennsylvania has construed constitutional provisions similar to our own:

"In the language of the constitution, article 4, section 2, 'The supreme executive power shall be vested in the governor, who shall take care that the laws be faithfully executed.' Also, same article, section 7: 'The governor shall be commander-in-chief of the army and navy of the commonwealth, and of the militia, except when they shall be called into the actual service of the United States.' He is also vested with the appointing and pardoning powers; the power to convene the legislature in cases of emergency and to approve or veto bills submitted to him by the general assembly. It is scarcely conceivable that a man could be more completely invested with the supreme power and dignity of a free people. Observe, the supreme executive power is vested in the governor and he is charged with the faithful execution of the laws, and for the accomplishment of this purpose he is made commander-in-chief of the army, navy and militia of the state. Who then shall assume the power of the people to call this magistrate to an account for that which he has done in discharge of his constitutional duties? If he is not the judge of when and how these duties are to be performed, who is? Where does the court of quarter sessions, or any other court, get the power to call this man before it, and compel him to answer for the manner in which he has discharged his constitutional functions as executor of the laws and commander-in-chief of the militia of the commonwealth? * * * If we once begin to shift the supreme executive power from him upon whom the constitution has conferred it to the judiciary, we may as well do the work thoroughly and constitute the courts the absolute guardians and directors of all governmental func-

tions whatever.   If, however, this can not be done, we had better not take the first step in that direction.   We had better at the outstart recognize the fact that the executive department is a co-ordinate branch of the government with power to judge what should or should not be done within its own department   *   *   *   and that with it, in the exercise of these constitutional powers, the courts have no more right to interfere than has the executive under like conditions to interfere with the courts." *Appeal of the Governor,*\* 85 Pa., 433.

As to the immunity of the governor from coercion by courts see *Sutherland v. The Governor,* 29 Mich., 320; *State v. The Governor,* 25 N. J. Law, 331; *State v. Drew,* 17 Fla., 67; *State v. The Governor,* 39 Mo., 388; *People v. Bissell,* 19 Ill., 229; *People v. Cullom,* 100 Ill., 472; *Rice v. Austin,* 19 Minn., 103; *Miles v. Bradford,* 22 Md., 170; *Marbury v. Madison,* 1 Cranch [U. S.], 137; *Hawkins v. The Governor,* 1 Ark., 570; *State v. Warmoth,* 22 La. Ann., 1; *Bates v. Taylor,* 87 Tenn., 319, 332; *Dennett, Petitioner,* 32 Me., 508, 511; *State v. Lord,* 28 Ore., 489, 525; *Low v. Towns,* 8 Ga., 360, 372; *State v. Morton,* 156 N. Y., 141.

*Frank N. Prout, Attorney General,* for respondent:

The state constitution divides the government into three distinct departments and requires each department to act within its own sphere.   The perpetuity of our free institutions depends upon a strict adherence to the essential mandate of the supreme law.

"The powers of the government of this state are divided into three distinct departments, the legislative, executive and judicial, and no person or collection of persons, being one of these departments, shall exercise any power properly belonging to either of the others, except as herein-

---

\*The grand jury of Allegheny county subpœnaed John F. Hartranft, governor, and Matthew S. Quay, secretary of state, to appear and give testimony in regard to the Pittsburg riots of July 21 and 22; 1877, which grew out of the strike of the trainmen. They refused to appear and pleaded their official privilege—state secrets.—RE-PORTER.

48

after expressly directed or permitted." Constitution, art. 2.

In 1867 an application was made by Robert J. Walker and one Sharkey, on behalf of the state of Mississippi, to the supreme court of the United States, for leave to file a bill against Andrew Johnson, president of the United States, and Edward O. C. Ord, military district commander, praying for a perpetual injunction restraining the enforcement of the Reconstruction Acts, on the ground that the same were unconstitutional and void. In delivering the opinion of the court, Chief Justice Chase said:

"An attempt on the part of the judicial department of the government to enforce the performance of such duties by the president might be justly characterized, in the language of Chief Justice Marshall, as 'an absurd and excessive extravagance.' It is true that in the instance before us the interposition of the court is not sought to enforce action by the executive under constitutional legislation, but to restrain such action under legislation alleged to be unconstitutional. But we are unable to perceive that this circumstance takes the case out of the general principles which forbid judicial interference with the exercise of executive discretion." *State of Mississippi v. Johnson*, 4 Wall. [U. S.], 475, 499.

In our own state, the case of *State v. Holcomb*, 46 Nebr., 612, is not in point. In that case the action was not brought against the governor in that capacity.

The case of *State v. Elder*, 31 Nebr., 169, goes further toward supporting the doctrine that the judiciary can coerce other branches of government than any case I have been able to find, and it may not be out of place to state a few of the facts surrounding the decision of that case, which are now a part of the political history of the state. Benton and others claimed to have been elected to the executive department of the state. Elder was the speaker of the house of representatives. A majority of the joint convention of the legislature and the officers elect, were of a different political party from the contestants. Con-

tests had been instituted against the relator and evidence had been taken and filed. The legislature by resolution, in joint session, had directed the speaker not to open the returns of the election until after the hearing and determination of the contests then pending. Benton filed an application for a peremptory writ of mandamus to compel Elder, as speaker of the house of representatives, to open the returns and declare the result of the election in the presence of a majority of both houses of the legislature. This application, as is shown by the record, was filed January 8, 1891. The answer was filed, argument of counsel heard, and the case decided, and the writ was in the hands of the sheriff and was served on the respondent at 12:20 p. m. of the same day. These facts are recited simply to show the haste with which the cause was heard and determined. It was a time of intense excitement. In the corridors of the capitol building were members of the state militia, in full uniform, bearing the accoutrements of war. The doors of representative hall, where the joint convention of the legislature was held, were barred and guarded; so that, when the sheriff went to serve the writ he was obliged to force the door. No briefs were filed by counsel for either side. When we consider the brief time that was occupied from the filing of the application to the final determination of the case, it will be seen that there was but little time for consideration. Indeed in the state of intense excitement that then existed on all sides, it was necessary for the court to speedily determine the case. The reasoning in the case is not in harmony with a vast majority of the cases by other courts on the same subject; and with all due respect for the court as then constituted, we beg leave to suggest that the opinion in the *Elder Case* should not be followed or approved. But, in any event, it is distinguishable from the case at bar. The constitution enjoined upon the speaker a purely ministerial duty.

Oral argument by all counsel save *John F. Stout.*

*Gurley* for relator:

There are two jurisdictional propositions before the court: First, can the writ issue to the governor in any event? Second, if so, is this a proper case?

The authorities cited do not apply under our constitution. Our constitution does not create one executive department with the governor as its head. It creates several executive departments. The head of one of these is the governor. In this our constitution differs from the New York, New Jersey and Michigan constitutions. This court has set numerous precedents for the coercion of inferior executive officers.

Whether or not an act is ministerial is to be determined by the answer to the question, does it involve discretion? In the performance of this act the governor has no discretion as to whether or not the act shall be performed. I desire to cite *Martin v. Ingham*, 38 Kan., 641, not cited in brief.

*Prout, Attorney General*, for respondent:

This question is a broad one. Has the court a right to interfere with the executive department? The government is divided into three distinct, separate and independent departments. One can not interfere with the other except where there is express constitutional authority so to do. The very idea of mandamus implies a command by a superior to an inferior. Mandamus is a Latin term—we *command*. The constitution provides that the supreme executive authority shall be lodged in the governor and that he shall take care that the laws be faithfully executed. He is answerable only to a high court of impeachment, the sovereign people at the polls and his official conscience. The cases of mandamus to inferior executive boards and officials are not in point. The decisions in cases of this character are numerous. The supreme court of Indiana has held both ways. But now Indiana stands against executive coercion. No authority

holds that the governor can be coerced to do a political act. The line between ministerial and executive acts is as hard to describe as the distinction between animal and vegetable life. This distinction must be made by the court issuing the writ. When the power to coerce the executive is once conceded, and the tribunal is its own judge of the occasion, what escape is there from a judicial oligarchy by the evolution of time? I think the better reasoning is for the doctrine that the governor can not be coerced at all. How could a court enforce its order? A court should never make an order which it can not enforce.

*Smith,* for respondent:

The granting of the writ means that every district and county court from Deuel to Douglas can mandamus or enjoin the chief executive of the state. The spectacle is humiliating.

The respondent cited the following authorities:

The governor is himself a distinct and co-ordinate branch of the government and can not be coerced. *Sutherland v. The Governor,* 29 Mich., 320. All duties required of the governor are executive and political. *State v. The Governor,* 25 N. J. Law, 331. In his capacity as governor the chief executive can not be coerced. This can only be done when acting in an ex-officio capacity. *State v. Drew,* 17 Fla., 67. It does not follow because an act is ministerial that it is any the less executive. *State v. The Governor,* 39 Mo., 388. The performance of duty required by the constitution can not be coerced. In considering the case of *State v. Elder,* 31 Nebr., 169, the court is bound to take cognizance of historical facts: That order was made at a time when political feeling ran high in the state of Nebraska, and it is more than possible that the excited state of the public mind became known and felt in the inner chambers of the consultation room of this honorable court. We are safe in saying that no

precedent for that writ can be found in any of the adjudicated cases reported in the books.' We are safe in saying that that case was without precedent, and will never be a precedent.

*Ransom,* for relator:

This court is vested with jurisdiction to pass upon any question of law which may arise; else, in the words of von Holst, it would be a "travesty on justice." No halo of glory encircles the gubernatorial brow. If the governor does not obey, you can put him in jail. You can declare acts of the legislature unconstitutional. The two houses are not immune. Where came this gubernatorial immunity? Is the governor sovereign? No; it is his excellency, not his majesty. No man, no set of men are superior to the law, and of that law you are judges. The objection that the court can not enforce its order is puerile. As is said by Judge O'Brien, in the dissenting opinion in *People v. Morton,* 156 N. Y., 136, 137: "If the courts may be deterred from deciding what the law is in such cases, upon some remote possibility that executive power will resist the execution of the judgment, it would follow that a mandamus should never go against one possessing the physical or political power to resist its commands; but should be confined to those who are too weak to defy it."

SULLIVAN, C. J.

This is an application to this court in the exercise of its original jurisdiction for a writ of mandamus commanding respondent, as governor of the state, to appoint fire and police commissioners for the city of Omaha. In his answer to the alternative writ respondent denies the authority of the court to coerce executive action in any case. and alleges that by reason of the judgment in *State· v. Moores,* 55 Nebr., 480, performance of the duty enjoined by the statute (sec. 167, ch. 12*a,* Compiled Statutes, 1901) would be necessarily barren of practical results. A com-

plete history of the litigation in which the present action
had its origin will be found in some earlier opinions of this
court (*Moores Case, supra; State v. Kennedy*, 60 Nebr.,
300; *Redell v. Moores*, 63 Nebr., 219) to which reference
is made. It is conceded that the statute directs the gov-
ernor, in imperative terms, to do just what the relator
has requested him to do. "Immediately on the taking
effect of this act, the governor shall appoint." This is
the language of section 167; and it is therein further pro- ·
vided that "whenever a vacancy shall occur in any board
of fire and police commissioners either by death, resigna-
tion, removal from the city or any other cause, the gov-
ernor shall appoint a commissioner to fill such vacancy."
It is also conceded that this is a constitutional and valid
law, but it is claimed that authority to enforce it has not
been committed to the judicial branch of the government.
The argument is that the three departments into which
all governmental powers are divided are co-ordinate; that
each is entirely independent of the others, and that the
issuance of a mandamus against the governor, in whom
is vested the supreme executive power, is justifiable only ·
on the theory that the executive department is inferior to
the judicial department and that the right of command
is given to one, and the duty of obedience imposed upon
the other. This argument is certainly plausible, but
whether it is sound is a point upon which the adjudged
cases are in irreconcilable conflict. The right of the courts
to determine all judicial questions, whenever and how-
ever they may arise, is given by the constitution in ex-
plicit terms and is indisputable; but equally clear and
incontestable is the right of the executive officers named
in the constitution to exercise all powers properly belong-
ing to the executive department. There is an obvious
logical difficulty in maintaining that two departments of
government are of equal rank, and independent of each
other, if one may command and the other must obey. A
member of the executive department who performs an
official duty in obedience to a writ of mandamus is a

passive instrument in the hands of the court; he is not in any proper sense an actor; he executes, not his own purpose, but a purpose originating in the judicial department of the government; he is in truth nothing more than the agency through which the court exercises an executive power. Considering the matter theoretically, and leaving practical results and past adjudications entirely out of view, it is hardly possible to escape the conclusion that the farthest limit of judicial authority in cases of this kind is to hear and determine; to give judgment establishing the relator's right, without issuing compulsory process to the respondent, whether he be the chief magistrate or some other member of the executive department. There seems to be no good reason for holding that one member of a co-ordinate branch of the government should be exempt from judicial control and the others subject to it. The principle of exemption from mandamus is grounded upon a distinct constitutional inhibition and does not at all depend upon official rank. Constitution, art. 2, sec. 1. As was said by Chief Justice Marshall in *Marbury v. Madison,* 1 Cranch [U. S.], 137, "It is not by the office of the person to whom the writ is directed, but the nature of the thing to be done, that the propriety or impropriety of issuing a mandamus is to be determined." Our own decisions make no distinction between the governor and the other officers of the executive department. Whether the writ should be granted or refused has been made in every case to depend upon the character of the act in question and not upon the office of the respondent. The argument that the judiciary in issuing a mandamus against a member of the executive branch of the government is thereby indirectly, and in violation of the constitution (art. 2, sec. 1), exercising a power properly belonging to the executive department, has never appealed convincingly to this court. In numerous cases the writ has gone against the auditor; and the right to issue it to any officer of the executive department, including the governor, is so thoroughly established by repeated

decisions that the question can be no longer regarded as open to discussion. All judicial controversies must end some time and this one seems to have run its course. It must be admitted that, according to the clear weight of authority, the chief executive can not, under any circumstances, be controlled by the writ of mandamus; but in this state, and in some other jurisdictions, a different rule prevails. The doctrine of this court is that when the law in positive terms enjoins upon the governor, or other officer of the executive department, a mere ministerial duty, leaving him no choice or discretion in regard to the matter,—no judgment to exercise as to whether he will or will not act,—the writ of mandamus may issue, and its issuance is an appropriate exercise of judicial power. In *State v. Thayer*, 31 Nebr., 82, a mandamus was issued against the governor and other executive officers, constituting the state board of canvassers, commanding them to canvass the votes cast for the relator as a candidate for judge of the sixth judicial district. In that case the court considered the authorities bearing upon the right of the judiciary to issue a coercive writ against the governor of a state, and reached the conclusion that the correct rule is that laid down in Maxwell's Pleading & Practice, page 735, in the following language: "There is a conflict in the authorities as to the right of a court to grant a mandamus against the governor of a state to compel the performance of a merely ministerial duty. That the courts have jurisdiction in such cases there seems to be no doubt. In a free government no officer is above the law, and should not be permitted to disregard it with impunity. No good reason can be given why a governor, whose duty it is to see that the laws are executed, should himself be permitted to set them at defiance." In *State v. Elder*, 31 Nebr., 169, which was an application for a mandamus to compel the speaker of the house of representatives to· open and publish the returns of a general election, the court said, in an opinion allowing the writ, that the leading cases denying the authority of the courts to mandamus

the governor of a state had been again examined and disapproved. In *State v. Boyd,* 36 Nebr., 60, the court took cognizance of an application for a mandamus to compel the governor to approve a bill of the State Journal Company for blanks and stationery. In *State v. Boyd,* 36 Nebr., 181, this court determined on the merits an application for a mandamus to compel Governor Boyd to issue a proclamation for the election of three additional members of congress. The writ was denied, not for want of jurisdiction, but because the right to apportion representatives among the states belongs exclusively to congress. *State v. Holcomb,* 46 Nebr., 88, was a case in which the court tried and determined a controversy involving the relator's right to a writ of mandamus commanding the governor to approve an official bond. It is true that in some of these cases the jurisdiction of the court was not challenged, but that circumstance is not important. In determining the cases on the merits the court necessarily decided in favor of its own jurisdiction. The authority of the courts in such cases does not, of course, depend upon the consent of the respondent. If jurisdiction exists it is given by law and does not rest upon mere official complaisance. *State v. Stone,* 120 Mo., 428. It seems to be conceded that the relator has a sufficient interest in the performance of the particular duty enjoined by the statute to entitle him to maintain this proceeding if the court has jurisdiction to entertain it. And it is evident that the refusal of the governor to discharge the duty of appointing fire and police commissioners for Omaha was not influenced in any degree by the character or quality of the act which the law, in imperative terms, directs him to perform. In other words, the position taken by respondent is not defended on the ground that the appointment of commissioners would not be the performance of a ministerial duty. The defense rests upon broader ground; it is that there is no authority in the court to coerce the governor, in any case, or under any circumstances, to exercise an executive power. The conclusion

to which we are compelled by our own decisions is that
we have, not only jurisdiction to decide the controversy,
but authority to issue the peremptory writ to enforce our
decision.   Whether the peremptory writ should actually
issue in a case of this kind is a question of great delicacy
and one which we do not here decide.   Speaking of the
cases in which the power of the courts to mandamus the
governor is asserted, Mr. Freeman says in the note to
*Greenwood v. Routt,* 31 Am. St. Rep. [Colo.], 284: "While
it must be admitted that these cases by no means consti-
tute the majority of those bearing upon the subject, yet
they seem to us to be based upon the better reasoning,
and more in accord with what has been the long adopted
policy of the highest judicial tribunal in the land, the
supreme court of the United States."   Nothing further
need, we think, be said on the question of jurisdiction.

The second proposition discussed by counsel was de-
cided in the *Kennedy Case,* and was, we think, decided
rightly.   The doctrine of *res judicata* is that a question
once determined by a judgment on the merits is forever
settled, so far as the litigants and those in privity with
them are concerned.   The question decided is, while the
decision stands, a sealed and closed question; the final
judgment, sentence, or decree fixing the rights of the par-
ties ends the controversy, and is in any future litigation
conclusive evidence of those rights.   Counsel for relator
concede the general rule as to the conclusiveness of judg-
ments, but insist that it has no application to a case in
which a sovereign state is seeking to enforce obedience
to its laws.   In other words, counsel contend that the
state, being vested with absolute power to govern society,
and having supreme authority to make and administer
laws, is not bound by an adverse adjudication in a matter
pertaining to its sovereignty.   "If such were the rule,"
said Mr. Justice Story in *Gelston v. Hoyt,* 3 Wheaton [U.
S.], 246, 317, "it would be a perfect anomaly in the law and
utterly subversive of the first principles of reciprocal
justice."   The fundamental conception of a judgment is

a judicial decision binding upon all the parties to the controversy. As defined by our own statute (sec. 428, Code of Civil Procedure) it "is the final determination of the rights of the parties in an action." By this statute the state has declared the legal effect and consequence of a judgment; it has said that, as between the parties, the judgment shall end the controversy and end it forever. The state, in the exercise of its governmental functions, is not obliged to invoke the aid of the courts in any case; but when it does so it assumes the character of an ordinary suitor, and is bound by self-imposed restraints; it claims no advantage over its adversary, and, though one is a sovereign and the other a citizen, they stand equal before the law. This is a just principle, and in it we see no serious danger to the public weal. It was recognized and enforced in England without judicial dissent as far back as the *Duchess of Kingston's Case*, 20 State Trials, 355. And in the highest court of this country it was early held, by the unanimous opinion of the judges, that the government was conclusively bound by a decision rendered against it in its sovereign character. *Gelston v. Hoyt, supra.* When a state brings an action for the enforcement of its criminal or revenue laws, it acts, of course, in its governmental capacity, but it is bound, nevertheless, by an adverse decision. The question decided can not be again litigated between the same parties, either in a civil or criminal case. *Coffey v. United States,* 116 U. S., 436; *New Orleans v. Citizens' Bank,* 167 U. S., 371. Notwithstanding what has been said by counsel for relator, we are still of opinion that *Holsworth v. O'Chander,* 49 Nebr., 42; *O'Connell v. Chicago T. R. Co.,* 184 Ill., 308, and *People v. Smith,* 93 Cal., 490, are direct authority upon the point we are now considering. In each of these cases the state was asserting a right on behalf of the general public; it was endeavoring as a sovereign power, to execute a public law; it was not seeking to recover or establish title to corporate property; and yet it was held to be concluded by the former adjudication, not on the untenable theory

that it was a party to the litigation only in its corporate
capacity, but because the decision was, in accordance with
the general rule, indisputable evidence of the rights of the
litigants. *McClesky v. State,* 4 Tex. Civ. App., 322, is also
directly in point. In that case the state was surely act-
ing in its governmental capacity; it was seeking to pre-
vent the usurpation of a franchise, and to oust the defend-
ants from holding and exercising offices that had no legal
existence; it was endeavoring, as the relator in this case
is, to put the administration of public affairs in the hands
of the duly constituted agents of the public.

The right of the state to oust the present members of
the board of fire and police commissioners of the city of
Omaha has been once tried and determined, and, under
existing conditions, the judgment rendered is an effective
bar to another suit for the same purpose. The right of
the mayor's appointees to hold the offices was the thing
adjudged in *State v. Moores,* and it is the only thing to
be adjudged in this action. The decision in the *Moores
Case* is not law, but for the purposes of this litigation it
stands in place of the law. The governor may, of course,
appoint, but in the face of a plea of *res judicata* we can
not put his appointees in possession of the offices. The
court is held in bondage by its own error. *Stat pro ratione
voluntas* is the rule of decision for this case.

The writ is denied.

WRIT DENIED.

SEDGWICK, J.

I concur in the conclusion that this court has jurisdic-
tion of the action but do not express any opinion on the
question of *res judicata.*

HOLCOMB, J., concurring.

I concur in the point stated in the 6th paragraph of the
syllabus and what is said in the opinion with respect
thereto. Further than that I express no opinion on the
subject of the jurisdiction and authority of the court to
coerce by mandamus the chief executive of the state.

On the question of the doctrine of *res judicata* as held. and applied in this case I concur in all that is said and decided in the opinion. ·

The following opinion on rehearing was filed July 22, 1902:

1. **Abstract Questions of Law:** SUBJECT OF LITIGATION: REAL PARTIES: RES IN DISPUTE: RES JUDICATA. Abstract ·questions of law can not, be made the subject of litigation. There must be real parties, and a *res* in dispute that will become *res judicata* when the litigation is determined.

2. **Former Determination:** FIRE AND POLICE COMMISSIONERS: APPOINTMENT BY MAYOR AND COUNCIL: GOVERNOR. The former determination of this court that certain parties were entitled to hold the office of fire and police commissioners of the city of Omaha, under the appointment of the mayor and council of the city, is not binding on the governor, so as to prevent his appointment of commissioners under the provisions of the act for the incorporation of metropolitan cities.

3. **Right of Parties:** RES JUDICATA. The right of the parties in that litigation to the term in dispute therein is *res judicata*, but the principle of law announced, having been found erroneous and overruled, will not be followed.

SEDGWICK, J.

After the former opinion in this case the relator filed what is by him denominated a motion for a new trial. This being an original action in this court, relator assumed that he was entitled to use this form of motion. After argument the court announced to the parties that the motion would be treated as a motion for a rehearing under rule 7, and not as a motion for a new trial. The reason for this view is that a new trial is a reconsideration of an issue of fact (Code of Civil Procedure, sec. 314), and in ·this case no evidence was taken and no issue of fact was presented. The sole office of the motion is to point out errors in the former opinion of the court. This is the province of a motion for rehearing. *First Nat. Bank v. Yocum*, 12 Nebr., 208. The court, after argument, being desirous of further considering the question presented, both parties were allowed time to file further briefs, and

the case was submitted as upon argument after rehearing had been allowed.

The power of the legislature to impose upon the governor the duty of appointing the board of fire and police commissioners for the city of Omaha was declared in *Redell v. Moores,* 63 Nebr., 219, overruling *State v. Moores,* 55 Nebr., 480, 41 L. R. A., 624. This question has not been discussed in the present proceeding, both parties regarding the matter as settled. Upon the former hearing there was much discussion upon the question whether the general rule as to the conclusiveness of judgments can be applied to sovereign states while acting in governmental capacity, and in the opinion (*State v. Savage, ante,* p. 684) it is said: "The state, in the exercise of its governmental functions, is not obliged to invoke the aid of the courts in any case; but when it does so it assumes the character of an ordinary suitor, and is bound by self-imposed restraints; it claims no advantage over its adversary, and, though one is a sovereign, and the other a citizen, they stand equal before the law." Upon the present hearing, the application of the rule in this case has been much discussed. The doctrine of *res judicata* requires that when a thing is determined by a court of competent jurisdiction the parties to that litigation shall not be allowed in any other case to retry the matter. The rule is of universal application. No proper party to litigation, whether sovereign or subject, is exempt from its control. To apply the rule it is necessary first to ascertain what issue was determined in the former litigation. It is said by respondent's attorneys in their brief:

"In the *Moores Case* the parties based their respective claims wholly upon the source from which they were derived. There was no common source. They claimed through entirely different sources. While the immediate question was the right to the offices for a limited term, a determination of that question necessarily involved a determination as to the location of the appointing power. A determination of that question was necessary, impera-

tive and unavoidable. A decision of the case could not be reached without first deciding that question. When that was determined the whole case was determined. That was the only question debated or decided. In whom was the appointing power, in the governor or the mayor? That was the only question submitted to the court, and the only question argued or decided."

This is a very plausible statement of the point insisted upon; but is it entirely sound? It was undoubtedly necessary to "determine the location of the appointing power" but was that the thing (*res*) in litigation, the substantive matter that the respective parties were contending for? Or was it a proposition of law called in to assist in determining the right of the respective parties to the thing in controversy?

That action was begun on the relation of the attorney general against J. H. Peabody et al., who were appointed by the governor. They answered, setting up their appointments as members of the board of fire and police commissioners for the city of Omaha. Peter W. Birkhauser et al., upon their application, were allowed to intervene, setting up their right to the office by virtue of an appointment from the mayor and council of the city. Each party demurred to the pleadings of the other, and the question presented was, which party, under the law, is entitled to hold the office,—the respondents for the term for which they had been appointed by the governor, or the interveners for the term for which they had been appointed by the mayor and council?

The object of the attorney general undoubtedly was to obtain from this court a construction of the law; that is, to ascertain whether, under the law, the governor should appoint, or the duty devolve upon the city authorities. That was the question argued by counsel, and discussed and decided by the court; but was it, in the legal sense, the subject-matter of the litigation? It seems clearly not. If the question had been presented to the court as the thing to be litigated, it would not have entertained it.

The relator would have been told that this was not a moot court. Abstract questions of law can not be made the subject of litigation. There must be real parties, and a *res* in dispute that will become *res judicata* when the litigation is ended. In the *Moores Case* the thing in dispute was the office itself, and it was determined that the interveners were entitled to the office for the term of their appointment, and respondents were ousted. This is *res judicata.* And in *State v. Kennedy*, 60 Nebr., 300, some of the respondents were still holding the terms adjudicated in the former case, and the doctrine of *res judicata* was applied.

In the determination of a case legal principles are invoked, and the conclusion of the court thereon announced. Whether such conclusions shall be followed, without further investigation, in subsequent litigation, frequently depends upon the principles of *stare decisis.* When such conclusion becomes a rule of property, it is adhered to until changed by statute; but when no rule of property is established, it is the duty of the court to re-examine and overrule its former decision when shown to be fundamentally wrong. *State v. Hill,* 47 Nebr., 456. The thing determined by the litigation becomes *res judicata,* and can not be afterwards questioned between the parties, although the rule of law by which the decision was controlled is afterwards found to have been incorrectly applied, and such application is no longer binding upon the court. The former is *res judicata,* and the latter is to be measured by the principles of *stare decisis.*

It being conceded that no legal appointments have been made, and that there are no legal incumbents of the office, and that the law requires the governor to make the appointments, it is manifest that he is not prevented from so doing by an erroneous determination of the right of certain parties to a prior and different term. We conclude, therefore, that it is now the duty of the respondent to appoint a board of fire-and-police commissioners for the city of Omaha under the statute in question.

The majority of the court is satisfied with the decision in *Redell v. Moores, supra,* but as it is not questioned in this proceeding, the writer has made no investigation of the questions therein discussed.

In the former opinion in this case it was said: "Whether the peremptory writ should actually issue in a case of this kind is a question of great delicacy, and one which we do not here decide." There has been no further discussion of that question by counsel, and we do not feel called upon now to determine or further consider it. It is not to be supposed that the peremptory writ will be necessary.

The judgment entered in this case is modified in accordance with this opinion.

JUDGMENT ACCORDINGLY.

HOLCOMB, J.

I am not prepared to express an opinion different from the one heretofore concurred in by me.

NOTE.—*Mandamus.—Governor.—Political Power.—Ministerial Act.—Patent to Public Land.*—The action of a governor in the exercise of his political or executive functions, whether conferred by the constitution or by statute, can not be controlled by mandamus. *Greenwood v. Routt,* 17 Colo., 156.

If in the exercise of some power, neither political nor essentially pertaining to government, the law specially enjoins upon the governor the performance of some particular act under circumstances in which he has no discretion, and he refuses to perform the act, and by his refusal a party is deprived of his property or other legal right, the injured party may have relief by mandamus against the governor, if there is no plain, speedy and adequate remedy in the ordinary course of law. *Greenwood v. Routt,* 17 Colo., 156.

Where public land has been regularly sold by the state land board, the purchaser or his assignee in good faith, is entitled to a patent therefor to be signed by the governor and otherwise attested as the law directs, whenever such purchaser or his bona-fide assignee has paid or tendered the full purchase price with lawful interest as the law provides, and has otherwise complied with the conditions of the purchase; and under such circumstances mandamus is an appropriate remedy in case of a refusal to execute and deliver a patent. *Greenwood v. Routt,* 17 Colo., 156.

Where the governor recognizes an act as legal and is proceeding

to execute its provisions, the courts can not directly interfere with the discharge of his duties and restrain him from executing the law, merely because it is alleged the law is unconstitutional. *Frost v. Thomas,* 26 Colo., 222. Campbell, C. J., dissenting.

Our state government is divided into three co-ordinate branches— executive, legislative and judicial—each of which, by the constitution, has its powers limited and defined. They are of equal dignit;. and within their respective spheres, equally independent. *Frost v. Thomas,* 26 Colo., 222, 223.

The act of the legislature in question in *Frost v. Thomas,* was the creation by the legislature of the new county of Teller. It was claimed that the law creating the county was unconstitutional. Chief Justice Campbell's dissent was based on his claim that *Frost v. Thomas* overruled the doctrine laid down in *Greenwood v. Routt.*

In 1859, Willis Lago, a free negro, was indicted for assisting a slave to escape from her owner. Lago afterwards fled to the state of Ohio. Governor Magoffin of Kentucky demanded his rendition from Governor Dennison of Ohio. The latter submitted the question to Wolcott, attorney general of the state, who advised that the requisition be dishonored because the offense charged was neither treason, felony nor a crime *malum in se;* that it was an offense unknown to the law of Ohio, and also not described as a crime by the statute of Kentucky. An application for a writ of mandamus was made to the supreme court of the United States. Taney, C. J., delivered the opinion, which was to the effect following, viz.: (1) The court had jurisdiction by virtue of the constitution, without any act of congress; (2) a suit by or against a governor is a suit by or against a state (see *State v. Chicago, R. I. & P. R. Co.,* 61 Nebr., 545, 62 Nebr., 123); (3) mandamus did not issue by any prerogative power, but in modern practice was an ordinary suit at law; (4) the words "treason, felony or other crime" (U. S. Constitution, art. 4, sec. 2, clause 2) meant every offense made punishable by the laws of the extraditing state; (5) it was the duty of the governor of Ohio to surrender Lago on demand of the governor of Kentucky; (6) the duty of the governor in the premises was merely ministerial; (7) but in a case of this kind the governor could not be coerced by the judiciary, not even by virtue of an act of congress. *Kentucky v. Dennison,* 24 How. [U. S.], 66.

*Nebraska.*—Mandamus can not be invoked to determine a title to an office. *Anderson v. Colson,* 1 Nebr., 172. Mandamus can not be invoked to compel commissioners of public lands and buildings to issue warrant to subcontractor for the erection of a public building. *People v. Butler,* 2 Nebr., 5. Mandamus is a proper remedy to compel a sheriff to appoint appraisers under the exemption law. *People v. McClay,* 2 Nebr., 7. The application and the answer are the only pleadings known to mandamus. When a demurrer is filed and overruled, the writ issues as of course. *People v. Hamilton County,* 3 Nebr., 244. Mandamus will not lie to compel county commissioners to adopt certain plans and specifications accompanying a bid. *People v. Commissioners of Buffalo County,* 4 Nebr., 150, 161. Mandamus

will lie to compel a justice of the peace to hold his office in the precinct from which he is elected, and any citizen thereof may maintain the action. *State v. Shropshire*, 4 Nebr., 411. Mandamus does not lie to compel a school treasurer to pay money to another district treasurer, unless the demand is accompanied by an order properly countersigned. *People v. Hodge*, 4 Nebr., 265. Mandamus does not lie for the removal of a county seat, where it appears that fraudulent votes cast in favor of the new location were sufficient to change the result. *State v. Thatch*, 5 Nebr., 94. Mandamus lies to compel county commissioners to levy tax for payment of judgment. *State v. Buffalo County*, 6 Nebr., 454. Mandamus lies to compel the delivery of state property unlawfully held. *State v. Bacon*, 6 Nebr., 286. The application must show prior demand and refusal and a duty imposed by law. *Kemerer v. State*, 7 Nebr., 130. An alternative writ must contain a statement of all necessary facts. *State v. School District*, 8 Nebr., 92. Writ never granted in anticipation of omission of duty. *Idem*. Verification should be absolute even in an ex-parte proceeding. *State v. School Districts*, 8 Nebr., 98. A stockholder of a corporation may compel its officers, by mandamus to make and publish the statement required by statute. *Smith v. Steele*, 8 Nebr., 115. In an application for mandamus to compel the payment of bonds, the general allegation that they were issued "for works of internal improvement" is insufficient. *State v. Thorne*, 9 Nebr., 458. A sheriff or constable who refuses to deliver property to the party entitled thereto can be coerced by mandamus. *State v. Cunningham*, 9 Nebr., 146. Mandamus does not lie to compel a sheriff to deliver property upon a judgment in a trial of right of property. *State v. Gillespie*, 9 Nebr., 505. What petition must show. *State v. Otoe County*, 10 Nebr., 19. Will not lie to compel commissioners to levy a tax to pay judgment of U. S. court on precinct bonds. *State v. Dodge County*, 10 Nebr., 20. Alternative writ will not issue unless relator is clearly entitled to relief. *State v. Helmer*, 10 Nebr., 25. Mandamus is invoked merely to compel action; it creates no new powers and is not a proceeding to correct errors. *State v. Nemaha County*, 10 Nebr., 32. Error can not be reviewed in an application for mandamus. *State v. Powell*, 10 Nebr., 48. Clerk may be mandamused to canvass a vote. *State v. Hill*, 10 Nebr., 58. Mandamus can not be substituted for quo warranto. *State v. Palmer*, 10 Nebr., 203. The writ will not issue to compel commissioners to audit account. *State v. Furnas County*, 10 Nebr., 361. The writ will not issue to coerce the payment of a judgment against a county pending garnishment proceedings. *State v. Otoe*, 10 Nebr., 384. A district judge can not grant the writ in vacation. *State v. Pierce County*, 10 Nebr., 476. Any citizen may enforce a matter of public right by mandamus. *State v. Stearns*, 11 Nebr., 104, 106. Writ will issue to compel payment of county warrants. *State v. Gandy*, 12 Nebr., 232. Writ granted to compel clerk to account for fees. *State v. Whittemore*, 12 Nebr., 252. Writ will not issue to compel the release of exempt property. *State v. Sanford*, 12 Nebr., 425. Mandamus is an action at law not reviewable on *appeal*—in the statutory sense of that word. *State v. Lancaster County*, 13 Nebr., 223, Writ

will not issue to compel action by county commissioners, in the case stated [basis to levy and estimate]. *Lancaster County v. State*, 13 Nebr., 523. Application must show that relator is entitled to the writ. *State v. Wallichs*, 13 Nebr., 278. Writ will issue against county commissioners to include in estimate sufficient, within legal limit, to cover claims. *State v. Gosper County*, 14 Nebr., 22. Writ issues only when relator has clear right, and no remedy in ordinary course of law. *State v. Omaha*, 14 Nebr., 265. Application for writ compelling removal to new county seat; answer of fraud and illegal voting, without statement of facts. *Hunter v. State*, 14 Nebr., 506. Board of equalization can be compelled to act by mandamus—*dictum*. *Sumner v. County of Colfax*, 14 Nebr., 524, 525. Lies only to control purely ministerial acts. *State v. Kendall*, 15 Nebr., 262. Lies to compel canvassing board to reassemble and complete canvass of election. *State v. Peacock*, 15 Nebr., 442. Writ will issue to compel a district judge to sign bill of exceptions after expiration of his term of office. *State v. Barnes*, 16 Nebr., 37. Demurrer lies to alternative writ; if overruled, respondent has right to answer. *Long v. State*, 17 Nebr., 60. In absence of affidavit on which writ issued at nisi-prius, the allegation of citizenship will be presumed. *Long v. State*, 17 Nebr., 60, 62. Writ lies to compel clerk to canvass returns of election. *Long v. State*, 17 Nebr., 60, 61. Application for writ against sole incumbent, will abate with his tenor, except the incumbent resign to avoid the writ. *State v. Guthrie*, 17 Nebr., 113. Writ lies to compel telephone company to furnish instruments. *Webster Telephone Case*, 17 Nebr., 126. Writ will not lie, at instance of taxpayer, to compel clerk to report fees, unless board refuses to act. *State v. Sovereign*, 17 Nebr., 173. Writ does not lie to compel issuance of execution when a defective stay bond has been amended correctly. *State v. Russell*, 17 Nebr., 201. Writ will lie to compel performance of ministerial duties. *State v. Cummings*, 17 Nebr., 311. To compel marshal in city of first class to report names of all engaged in liquor traffic. *State v. Cummings*, 17 Nebr., 311. Alternative writ may be canceled by court. *State v. Matley*, 17 Nebr., 564. Writ will not lie to compel the acceptance of highest bid for leasing of school lands, unless there is an abuse of discretion. *State v. Scott*, 17 Nebr., 686. Writ lies to compel county board to act on complaint against county officer. *State v. Saline County*, 18 Nebr., 422. Writ lies to compel license board to appoint day for hearing remonstrance. *State v. Reynolds*, 18 Nebr., 431. Court will not determine constitutionality of election law, on application for writ to call an election. *State v. Douglas County*, 18 Nebr., 506. Writ does not lie to compel board of educational lands and funds to award lease. *State v. Scott*, 18 Nebr., 597. Writ lies to compel school officers to allow children to attend school in district to which land of parents has been attached by order of county superintendent. *State v. Palmer*, 18 Nebr., 644. Writ does not lie to fix supersedeas bond in case stated. *State v. Judges*, 19 Nebr., 149. Writ lies to compel issuance of order of sale. *State v. Thiele*, 19 Nebr., 220. Writ lies to compel certification of bonds legally issued. *State v. Babcock*, 19 Nebr., 230. Writ lies to compel letting of contract

for county supplies to the lowest bidder. *State v. Saline County*, 19 Nebr., 253. Writ does not lie where county board rejects all bids. *State v. Saline County*, 19 Nebr., 253. Writ lies to compel officer removed to surrender his office. *State v. Meeker*, 19 Nebr., 444. Writ does not lie to compel change in location of railway station until action of railway commission. *State v. Chicago, St. P. M. & O. R. Co.*, 19 Nebr., 476. Writ can only enforce a duty enjoined by law. *Thatcher v. Adams County*, 19 Nebr., 485. Writ lies to restrain collection of taxes unauthorized. *Thatcher v. Adams County*, 19 Nebr., 485. Writ lies to compel payment of school district orders. *State v. Bloom*, 19 Nebr., 562, 565. The foregoing citations are not all the cases of mandamus in volumes 1-19, but they are believed to cover all important questions peculiar to mandamus therein reported.

The following important decision rendered by the attorney general's office can not fail to be of interest: "The legal voters of a rural school district may be compelled by mandamus to vote revenue for school purposes, and a parent or guardian or the county superintendent may apply for such writ." Report for biennium ending November 30, 1902, pp. 247-251, Frank N. Prout, Attorney General.— REPORTER.