MARTIN HERPOLSHEIMER ET AL., APPELLEES, v. ACME HARVESTER COMPANY, APPELLANT.

FILED DECEMBER 17, 1908. No. 15,404.

1. **Appearance.** Plaintiff obtained service on defendant by an affidavit in attachment and service on V. B. as garnishee. Defendant appeared specially and challenged the jurisdiction of the court. The special appearance was overruled. Defendant, not waiving, but still relying and insisting upon, its objections to the jurisdiction, answered to the merits. The trial resulted in judgment for plaintiff and an order on the garnishee to pay the money into court. Defendant appealed and filed a supersedeas bond, whereupon the parties entered into a stipulation and procured the entry of an order discharging the garnishee. *Held*, A general appearance by defendant.

2. **Judgment: RES JUDICATA.** The doctrine of *res judicata* is that a question once determined by a judgment on the merits is forever settled, so far as the litigants and those in privity with them are concerned, but, where issue has not been joined nor any trial had on the merits, the doctrine of *res judicata* does not apply.

3. **Principal and Agent: AUTHORITY OF AGENT.** An agent for the sale of farm machinery and twine, who is clothed by his principal with power "to make contracts and settlements and collect balances, and the like," has full power to bind his principal by an agreement to relieve a customer to whom he has sold an amount of twine largely in excess of the demands of trade of such cus-

tomer by directing such customer to ship such excess to other
parties named by said agent.

4. **Trial: INSTRUCTIONS.** Although an instruction given to the jury
may be somewhat broader than the pleadings, it is not error to
give it, if it be in harmony with the theory upon which both
parties have tried the case.

5. **Sales: EVIDENCE.** Evidence examined and set out in the opinion
*held* sufficient to sustain the verdict of the jury.

APPEAL from the district court for Lancaster county:
ALBERT J. CORNISH, JUDGE. *Affirmed.*

*E. M. Bartlett* and *Billingsley & Green,* for appellant.

*Field, Ricketts & Ricketts, contra.*

FAWCETT, J.

This action was brought in the district court for Lan-
caster county to recover a balance due for 6,000 pounds
of twine. Plaintiffs are residents of Nebraska, and de-
fendant an Illinois corporation. Service was obtained by
an affidavit in attachment and service upon one A. E. Van-
Burg, a resident and citizen of Lancaster county, as gar-
nishee. Defendant appeared specially and challenged the
jurisdiction of the court upon the ground that the in-
debtedness due from the garnishee to defendant was pay-
able at Peoria, in the state of Illinois. The objections to
the jurisdiction were overruled, whereupon defendant
filed its answer, in the first paragraph of which it again
raised the question of jurisdiction. In the second para-
graph defendant alleges that prior to the commencement
of this action plaintiffs had filed a petition in the county
court of Lancaster county, substantially in the same words
and figures of the petition filed in this case, filed their
affidavit for service by publication, substantially in the
words and figures in the affidavit for publication in this
case, and an affidavit in attachment and garnishment, sub-
stantially the same as in this case; "that issues were
joined in said court between plaintiffs and the defendant,

to the end that the same matters at issue in this case were litigated in said county court of Lancaster county, Nebraska, and said court entered judgment determining the same, dismissing the cause of action of plaintiffs, and further holding that the court was without jurisdiction in the premises; that said judgment was duly entered by 'a court of competent jurisdiction in an action between these plaintiffs and this defendant, in which the subject matter at issue was identical with the subject matter at issue in this case, and that said judgment constitutes and is an adjudication of the matters sought to be put in issue herein; and that, although the plaintiffs herein prosecuted error proceedings from said judgment, and took an appeal from such judgment, both said error proceedings and said appeal have been dismissed by this court, and the judgments of this court in both of said cases dismissing said error proceedings and said appeal are in full force and effect, unappealed from, as is also the judgment of the county court of Lancaster county, Nebraska, as hereinbefore pleaded, of full force and effect." The third paragraph of the answer is prefaced as follows: "For further answer, the defendant, in no manner waiving, but at all times relying and insisting upon, its objections to the jurisdiction herein, says," and then specifically denies a number of allegations in plaintiffs' petition. The fourth paragraph is prefaced as above, and alleges a compromise settlement and adjustment of all matters between plaintiffs and defendant. The fifth paragraph is prefaced as above, and then denies each and every allegation in plaintiffs' petition not specifically admitted. The answer ends with this prayer: "Wherefore, having fully answered, defendant prays judgment against plaintiffs for costs." The reply, as it stood at the time of the trial, is a general denial. There was a trial to the court and a jury, which resulted in a verdict for plaintiffs, upon which judgment was duly entered, together with an order upon the garnishee to pay the money in his hands into court. Subsequently defendant filed a supersedeas bond to stay the ex-

ecution of said judgment pending the present appeal. After the giving of the supersedeas bond the following stipulation was entered into between the parties: "It is hereby stipulated that this cause having been appealed to the supreme court, and a supersedeas bond having been given, an order may be granted discharging the garnishee in this case." Whereupon the court made the following order: "On reading and filing stipulation herein, and this cause having been appealed to the supreme court by the defendant, and it appearing to this court that a supersedeas bond has been filed herein in the supreme court, and the parties having filed a stipulation by reason of such supersedeas bond, that the garnishee herein, A. E. Van Burg, be discharged. It is therefore ordered that the said garnishee A. E. Van Burg be, and he is, hereby discharged and entirely freed from said garnishment proceedings."

The defenses of want of jurisdiction and *res judicata* are again insisted upon in this court. The defense of want of jurisdiction must fail. The stipulation for the discharge of the garnishee, although made after judgment in the district court, clearly constituted a general appearance in the action. "A defendant may appear specially to object to the jurisdiction of the court, but if, by motion or other form of application to the court, he seeks to bring its powers into action, except on the question of jurisdiction, he will be deemed to have appeared generally." *McKillip v. Harvey*, 80 Neb. 264. This has been the rule in this court ever since *Cropsey v. Wiggenhorn*, 3 Neb. 108. The record shows that in the action brought in the county court issue was never joined nor any trial had on the merits. The county court sustained defendant's special appearance, and dismissed the action for want of jurisdiction. Plaintiffs appealed, and also prosecuted proceedings in error to the district court from that judgment of dismissal; but in the district court, as stated by counsel for defendant in their brief, said proceedings were dismissed by attorneys for plaintiffs. In

the face of this record, it is very clear that the defense of *res judicata* must also fail. Where issue has not been joined nor any trial had on the merits, the doctrine of *res judicata* does not apply. The rule is well stated by SULLIVAN, C. J., in *State v. Savage,* 64 Neb. 684: "The doctrine of *res judicata* is that a question once determined by a judgment on the merits is forever settled, so far as the litigants and those in privity with them are concerned." In Wells, Res Adjudicata, sec. 13, it is said: "It is an essential requisite of a conclusive judgment that it should go to the merits of the controversy in hand, and hence must not be based merely upon technical defects in the pleadings. Otherwise, as a general rule, it will not bar a subsequent action upon the same subject matter by the same parties. For example, if the foundation of a suit is the right of property, and the matter actually adjudicated relates only to a particular form of remedy, it is evident that the real question of the right of property is still *res integra,* not being adjudicated. The merits are not involved, for if a certain form of action be improper, there may be another one wholly unobjectionable." The same author (sec. 440) says: "Where a refusal to award a mandamus does not include an adjudication on the merits of a question of title, the refusal cannot conclude the question of title, or if the failure is because the court has no jurisdiction, nothing is conclusive, even if the evidence is heard." In *Waddle v. Ishe,* 12 Ala. 308, it is held: "Where evidence is heard by a justice of the peace upon the merits in a suit before him for a trespass, but the cause is eventually dismissed by him for want of jurisdiction, this not being a decision upon the merits, is no bar to a subsequent suit for the same cause of action."

While plaintiffs in their petition based their claim for a recovery upon a number of different items, when the case came on for trial, they abandoned all of those items except their claim for 6,000 pounds of twine, and the case was tried upon that claim only. The evidence shows substantially that in the spring of 1904 plaintiffs, who were

then engaged in the agricultural implement business in the city of Hastings, placed an order with one W. A. Howard, a representative of defendant, for 20,000 pounds of twine. Shortly after giving the order plaintiffs attempted to countermand the same to the extent of one-half thereof, but, the twine having been already shipped, they were advised by defendant's general agent at Omaha that it was too late to countermand. This letter was dated June 23, 1904. On the next day Mr. Howard wrote plaintiffs from Osceola, Nebraska, as follows: "In regard to twine we will ship extra 10,000 pounds elsewhere. Yours truly, W. A. Howard." The letterhead bears the card: "W. A. Howard, Traveler Acme Harvester Co., Phone 67." Mr. Rudolph Herpolsheimer, who was in charge of plaintiffs' business at Hastings, testified that at the time he gave the order for the 20,000 pounds of twine he supposed they were ordering it from the defendant; that they were local agents for defendant, and knew Mr. Howard as the representative of defendant in that district; and that, while he signed a written order for the twine, he did not read it. When they received the twine, they received it from Hooven & Allison Company, Xenia, Ohio. It appears that Hooven & Allison Company is a manufacturer of twine, and that defendant was their agent and distributor for the state of Nebraska. Subsequent to Mr. Howard's letter of June 24, stating that "we will ship extra 10,000 pounds of twine elsewhere," one O. P. Olson, who was the general agent of defendant in Nebraska, and, as appears from the evidence, had practically exclusive charge of defendant's business in this state, wrote plaintiffs the following letter: "Omaha, Neb., July 5, 1904. Herpolsheimer Implement Co., Hastings, Neb. Gentlemen: Saturday we asked you to ship twenty-five hundred pounds of twine to Trager & Stromquist, Bertrand, Neb., fifteen hundred pounds to John Atwood, Moorefield, Neb. We asked you to collect no advance freight. This was an error. If you have not already shipped the twine, collect $6.25 on the twenty-five hun-

dred pounds you shipped to Bertrand, and $3.75 on the fifteen hundred pounds you shipped to Moorefield. This is the amount of freight you have in the twine. Yours truly, Acme Harvester Company, by O. P. Olson, General Agent."

Prior to the writing of this letter, some time in June, 1904, plaintiffs were directed by Mr. Howard to ship 6,000 pounds of twine to Guick & Paulson at Trumbull, Nebraska, and to collect $25 or $26 advance freight charges. Plaintiffs complied with the request, and shipped the 6,000 pounds as directed. They also complied with the directions of Mr. Olson contained in his letter of July 5, and shipped 2,500 pounds to Trager & Stromquist, Bertrand, Nebraska, and 1,500 pounds to John Atwood, Moorefield, Nebraska. It will be seen that these amounts aggregate the quantity which Mr. Howard had stated they would ship elsewhere. Plaintiffs sold 2,000 of the remaining 10,000 pounds, and the remaining 8,000 pounds were destroyed by fire. For some reason not disclosed, the insurance companies declined to pay plaintiffs' loss, and suit was brought against the companies by Ricketts & Ricketts, as attorneys for plaintiffs. Plaintiffs subsequently made a settlement of their account with Hooven & Allison Company by giving them an order upon Ricketts & Ricketts to be paid when plaintiffs realized upon their insurance. Some point is attempted to be made by defendant on the fact that plaintiffs had not paid Hooven & Allison Company any money; but we think that is immaterial, as their adjustment of that matter seems to have been entirely satisfactory to Hooven & Allison Company. At any rate, they are not here objecting. Hooven & Allison Company collected for the 2,500 pounds from Trager & Stromquist, and for the 1,500 pounds from Atwood, but declined to recognize the transfer of the 6,000 pounds to Guick & Paulson. Mr. Herpolsheimer testifies that he shipped the 6,000 pounds of twine to Guick & Paulson on the order of Mr. Howard; that plaintiffs never opened any account with Guick & Paulson, and never had any deal-

ings or communication with them in relation to the twine; the effect of his testimony being that the plaintiffs considered the matter from that time forward as a matter purely between defendant and Guick & Paulson, and in this he is corroborated by the testimony of Mr. Guick. Mr. Howard testified that he was not acting for the defendant in that matter; that plaintiffs had stated to him that they were going to be "long on twine," and that he, learning that Guick & Paulson wanted to buy some 5,000 or 6,000 pounds, told plaintiffs that they could sell their twine to them; that he never knew until shortly before the trial that plaintiffs were claiming that their transfer of 6,000 pounds of twine to Guick & Paulson was in effect a sale thereof to defendant. Later on, and in the fall of that year, Mr. Howard collected $165 from Guick & Paulson on the twine account, but he says he made such collection at the request of plaintiffs. This Mr. Herpolsheimer denies. He testified that Howard and Mr. Olson came to him and wanted him to give them an order on Guick & Paulson for the money due on the twine; that he refused to do so, informing them that it was not his account, but theirs. Howard denies this, and testified that Mr. Herpolsheimer told him that he had been over to Guick & Paulson's to try to collect for the twine, and had been unable to do so. This Mr. Herpolsheimer denies positively, stating that he never went to see Guick & Paulson about it; and he is corroborated by Mr. Guick, who testified that they never had any dealings whatever or any communications with plaintiffs in relation to the twine. For some reason Mr. Olson, the general agent, was not called by defendant to corroborate Mr. Howard in this matter.

Both parties on the trial of the case seem to have treated the transaction in relation to the shipment of the 6,000 pounds of twine by plaintiffs to Guick & Paulson as a sale; and it is urged by defendant that Mr. Howard had no authority whatever to purchase twine for the defendant. We do not think the transaction was in the

strict sense of the term a sale. It was more in the nature
of a taking back by defendant from plaintiffs of part of
the twine which it had sold to them. They had sold
plaintiffs 20,000 pounds of twine. It became apparent
that by this sale it had overstocked its local agents, and so,
in accordance with the letter of Mr. Howard to the plain-
tiffs, it directed the shipment of the extra 10,000 else-
where, so that, to the extent of that 10,000 pounds, it
treated plaintiffs as distributors, and, when it ordered the
10,000 pounds distributed by shipment to the three parties
above named, it thereby canceled plaintiffs' order to the
extent of the quantity so transferred, and we think was
thereafter bound to look to the parties to whom it or-
dered it transferred, and not to plaintiffs. As to such
matters we think Mr. Howard had full authority to rep-
resent the defendant. Defendant called Mr. Howard to
the witness stand, and we have the following as a part of
his direct examination: "Q. What is your business? A.
I held a block out there for the Acme Harvester Company
in 1904. Since that time I have been with the Acme Har-
vesting Machine Company in the same position. Q. As
their agent? A. Yes, sir. Q. What are your duties as
agent and blockman, and what were they in 1904 for the
Acme Harvester Company? A. To make contracts and
make settlements and collect balances, and such like as
that. Q. Now, what did that territory embrace—how
much of the state of Nebraska? A. Oh, from York county
straight across to the Platte river, and all west on the
south side of the Platte river; that would be 30 odd
counties, or more." This testimony was offered by de-
fendant itself, and to our minds it clearly shows that Mr.
Howard had full authority, if he found he had made a
contract with plaintiffs for more twine than they could
handle, to agree with them that he would have any por-
tion of such twine shipped to other points, and thereby
relieve plaintiffs of their excessive order, and that such
action on his part would bind the defendant. Whether

he in fact did so or not is a disputed fact in the case, and was for the jury.

Mr. Howard testified that the money which he collected from Guick & Paulson was credited to the plaintiffs upon their account for machinery which defendant had sold plaintiffs. We think that fact is immaterial, as plaintiffs are not now seeking to recover from defendant the amount so collected, but have accepted the credit so given by defendant, and are simply seeking to recover the remainder due for the 6,000 pounds delivered to Guick & Paulson. The question of ratification is discussed at some length in the brief, but, in the light of our holding that Howard had authority to represent defendant in the matters complained of, it is unnecessary to consider that question.

Complaint is made of certain instructions given by the court, particular objection being taken to instruction No. 2, or rather to that portion thereof which reads as follows: "The burden of proof is upon the plaintiffs to show these facts by a preponderance of the evidence. When the plaintiffs have so shown that the twine was so furnished the defendant upon the order of Howard, and have shown either that said Howard was at the time acting as the duly authorized agent of the defendant for that purpose, or have shown that such act upon his part, though not authorized at the time, was afterwards ratified by the defendant, such facts would constitute a sale of the twine so shipped, and in such case the plaintiffs would be entitled to a verdict at your hands against the defendant in a sum equal to the amount you find was the value of said 6,000 pounds of twine at the time it was furnished, less $165, with interest thereon at the rate of 7 per cent. per annum." The first part of instruction No. 2, which defendant admits was correct, reads as follows: "As the case is presented to you for your determination, it is claimed by the plaintiffs that W. A. Howard, acting as agent for the defendant, ordered the twine in question shipped to Guick & Paulson; that, in pursuance to said order, the plaintiffs shipped the twine to Guick & Paulson; that at the time

when said Howard so ordered the twine shipped, and, in pursuance thereof, the plaintiffs furnished the twine for shipment, the said Howard was acting as the duly authorized agent of the defendant for such purpose, or, if not so acting, that the defendant, the Acme Harvester Company, afterwards through its general agent having knowledge of the material facts touching the shipment ratified the acts of the said Howard." While this instruction is somewhat broader than the pleadings, it is clearly in line with the theory upon which both sides tried the case, and we think the court did not err in giving it. Counsel say this instruction was a direct and positive charge to find a verdict for the plaintiffs, leaving nothing whatever for the jury to find as to the facts or the weight of the testimony. In this we think counsel are in error.

It is claimed that instruction No. 3 is inconsistent with instruction No. 2, and does not state the contention of the defendant. Instruction No. 3 reads as follows: "It is the claim of the defendant that it did not purchase the twine in suit from the plaintiffs, and that its only connection with the transaction is that W. A. Howard, its agent with limited authority, acted in the matter of the sale by the Herpolsheimer Implement Company, its local agent at Hastings, to Guick & Paulson, its local agent at Trumbull, of the twine, and that later, when Howard called upon the plaintiffs for payment of the amount due upon their implement account to the defendant, plaintiffs instructed the said Howard to collect from Guick & Paulson the amount due from plaintiffs to defendant, and that the said Howard, as so instructed, collected such amount and remitted the same to defendant." We cannot agree with counsel that this does not state the contention of the defendant. On the contrary, we think it is a very clear statement of its contention.

In the concluding paragraph of their brief, counsel for defendant call attention to a number of the rulings of the trial court in the admission of testimony. We have

examined the record, and are unable to say that there is reversible error in any of the instances pointed out.

An examination of the entire record satisfies us that the case was fairly presented to the jury under proper instructions on conflicting evidence, and that there is ample evidence in the record to sustain the verdict. The judgment of the district court is therefore

AFFIRMED.