JOHN C. MERRILL v. STATE OF NEBRASKA.

FILED JULY 10, 1902.   No. 12,645.

1. **Food Commissioner:** GOVERNOR: DEPUTY: CONSTITUTION. The provisions of the act of the legislature of 1899, being chapter 35 thereof (Compiled Statutes, 1901, ch. 33), creating a food commission, making the governor the food commissioner, providing for the appointment of a deputy food commissioner, and defining the duties of the officers so provided for, does not contravene the provisions of section 26, article 5, of the constitution, wherein it is declared: "No other executive state office shall be continued or created, and the duties now devolving upon officers not provided for by this constitution shall be performed by the officers herein created."

2. ———: ———: ———: ———. Nor does said act conflict with section 11, article 3, of the constitution, declaring "that no bill shall contain more than one subject."

3. ———: ———: ———: ———. Where a part of an act has been declared invalid, and the remainder is complete and perfect in all its parts, and is capable of execution, it will be upheld and enforced, unless it is apparent that the invalid part was an inducement to the adoption of the remainder.

4. ———: ———: ———: ———: SALARY: APPROPRIATION: INDUCEMENT TO PASSAGE. *Held*, That the part of the act under consideration relating to an attempted appropriation for the salary of the deputy food commissioner, which has been declared invalid, was not an inducing element to the passage of the remainder of the act.

ERROR from the district court for Clay county. Tried below before STUBBS, J. *Affirmed*.

*Hainer & Smith*, for plaintiff in error.

*Frank N. Prout, Attorney General*, and *Norris Brown*, for the state.

HOLCOMB, J.

Plaintiff in error, defendant below, was convicted of the offense of operating a creamery without having first procured from the food commissioner of the state an annual permit therefor, as provided by section 7, chapter 33, Compiled Statutes, 1901, entitled "Food Commission." He prosecutes error proceedings in this court, contending that his conviction is unlawful, for the reason that the statute under which the conviction was had is unconstitutional. No other question is presented by the petition in error or in briefs of counsel.

While it is contended that the statute violates different provisions of the fundamental law, chief reliance as to its unconstitutionality is grounded on the contention, that the act violates section 26, article 5, of the constitution, wherein it is provided that "no other executive state office shall be continued or created, and the duties now devolving upon officers not provided for by this constitution,

shall be performed by the officers herein created." It is argued that an executive office called a "food commission" is created, and an executive state officer designated as a "deputy food commissioner" is provided for, contrary to the fundamental law quoted. An examination of the act in question in the light of the provisions of the constitution referred to, compels us to admit there is some merit for the contention of the defendant, and in doing so we are not to be understood as casting any doubt on the soundness of the prior utterances of this court holding that new and additional duties may be laid on one or more of the present state officers, and that for the purpose of efficiently discharging such additional duties, valid legislation may be enacted, providing for deputies or other assistants to aid in the performance of the duties thus imposed, without trenching on the provisions of the constitution heretofore quoted. It is not competent for the legislature to create any other executive state office than those mentioned in the constitution, or to provide for other state executive officers than those recognized by that instrument. It is competent for that body to enact all needful and necessary laws for the government and welfare of the people not prohibited by that instrument, and to provide especially for the administration and enforcement of such laws by one or more officers of the executive department, and also to provide for such deputies or assistants as seem to be necessary for the discharge of such additional duties, if such necessity there be. With these preliminary observations, we will consider briefly the act under consideration, for the purpose of determining whether its alleged unconstitutionality is manifest to and beyond that degree of doubt which is required before we are justified in annulling an act of the legislature on the ground that it conflicts with the paramount law; such consideration to be had with special reference to the construction heretofore placed on this same section of the constitution in the many different prior decisions of this court in relation to the subject.

The act in question is a part of the laws of the legislative session of 1899, being chapter 35 thereof, regulating the manufacturing and sale of foods, providing for a system of reports, inspection and permits, fixing fees for the same, and providing penalties for violations of the act. We have had occasion once before to consider the act in question, and there held that that part thereof which attempted to appropriate from the state treasury a certain amount as annual salary for the deputy food commissioner was unconstitutional and void. *State v. Cornell*, 60 Nebr., 276. It is there said, speaking of the act: "The act purports, *inter alia,* to create a food commission; to make the governor the food commissioner, with authority to appoint a deputy food commissioner at a salary of $1,500 per annum, payable monthly, together with his expenses actually and necessarily incurred in discharging the duties of his office; to authorize such deputy to employ a clerk at a salary not to exceed $75 a month; to define the duties of the food commission and its commissioners; to require dealers in imitation butter and imitation cheese to make reports; to provide for permits for dealers and manufacturers of certain articles and for the inspection thereof; to prescribe fees, and to provide for their payment into the state treasury and penalties for the violation of the provisions of the act." It is especially urged against the validity of this act that it in terms and in fact makes the deputy food commissioner the executive officer of the commission created by the act, and charges him with the discharge of the duties therein imposed, rather than the governor, who is designated as food commissioner, and who is an executive officer recognized by the constitution. While, as heretofore intimated, there is some ground for this contention, we are of the opinion that a careful consideration of the entire act must lead to the conclusion that the legislation is of the same general character, and involves the same exercise of power, as that of the enactments creating a state board of transportation and a state labor bureau,

each of which has been declared a valid exercise of legislative power, and not in contravention of the section of the constitution appealed to as forbidding such legislation. Much other legislation of the same kind might also be referred to, but the above will suffice for all present purposes. While the deputy food commissioner is given authority almost coextensive with the governor as food commissioner, a critical analysis of the act discloses that he acts only in the capacity of a deputy, controlled by and under the direction of the governor, who is primarily charged with the duties of enforcing the provisions of the act, and who is the responsible officer mentioned and recognized as the one upon whom the duty devolves of carrying out the provisions of the act. The deputy is appointed by the governor; holds his office during the pleasure of the appointing power; and when acting for and instead of the governor,—that is as deputy of the food commissioner,—he is given and may exercise equal power and authority, subject, however, to the approval of the food commissioner. He is required to give bond, make a report to the governor at stated times, and is authorized to appoint a clerk; but these circumstances alone would not make him an executive officer. The legislature may, we apprehend, prescribe what are the duties of a deputy officer as well as the principal. The other provisions of the act provide, in substance, that the law shall be enforced by the food commission through its duly accredited officers, and that the food commissioner shall have control over all of the subjects mentioned as coming within the scope and provisions of the entire act.

In *In re Railroad Commissioners*, 15 Nebr., 679, an ex-parte proceeding on an inquiry addressed by the legislature to the court, it is held in the syllabus that supervision of railroads by a commission would be proper, but the power must be conferred on executive officers already existing. In the opinion of the judges it is said: "In answering the former questions, we have seen that all executive power must be enforced by the officers provided

40

for by article 5, as constituting the executive department, and that the powers imposed upon railroad commissioners by the statute of the state of Iowa (and we presume the same to be of other states which have resorted to similar legislation) are executive. We know of no constitutional inhibition to the imposition of additional executive power, as such, upon any or either of the officers constituting the executive department, and we do think it within the scope of legislative wisdom to frame a law for the regulation of the management of railroads under the commissioner system, with the above limitation as to the personnel of the commissioners, and within the limits of the constitutional powers of government over private or corporate rights, which would be capable of enforcement." *In re Appropriations,* 25 Nebr., 662, is an opinion in answer to a similar inquiry, wherein it is held section 26, article 5, of the constitution, prohibits the creation of a new executive department, but does not prohibit the appointment of a deputy by the auditor, treasurer, secretary of state, or commissioner of public lands and buildings. In *Pacific Express Co. v. Cornell,* 59 Nebr., 364, the question of the validity of the law providing for the creation of a railroad commission, defining their powers and duties and providing for the appointment of secretaries to assist in the performance of the duties so imposed, is directly presented for decision, and it is there held that such legislation is valid, and does not violate section 26, article 5, of the constitution. It is said in the opinion by HARRISON, C. J.: "The constitution makers sealed the doorway to any more executive state offices, and must have done so, knowing and contemplating the future growth and development of the state and the consequent birth and existence of further duties; and their manner of disposition of them was that the constitutional officers should attend to them. In the decision, *In re Railroad Commissioners, supra,* the right of the legislature to do what afterward was done in the law under discussion, was recognized, and one of the judges who concurred in that opinion was a member of the

constitutional convention, and must have known what was the import of the constitution as he listened to, and participated in the debates and considerations of its different sections, and gathered information of reasons underlying, and the meaning embodied in them, which doubtless was remembered more or less distinctly at the time of the opinion. In three cases in which decisions of this court have been rendered, the authority and power of this board to act have been sustained. See *State v. Fremont, E. & M. V. R. Co.*, 22 Nebr., 313, 23 Nebr., 117; *State v. Missouri P. R. Co.*, 29 Nebr., 550. The validity or constitutionality of the law of the creation of the board was not discussed. It was necessarily involved, as, if the law was invalid, there would exist no authority by it to act. We are satisfied that the law is not invalid for being, in the particulars noticed in the attack herein made upon it, repugnant to the provisions of the constitution, to which attention has been challenged, and that in the cases cited it has been, in effect, declared not invalid." Again in *Nebraska Telephone Co. v. Cornell*, 59 Nebr., 737, adhering to the same rule of construction, it is said by SULLIVAN, J., speaking of the opinion in 15 Nebr., 679, and of the subject generally: "We are aware that this case [*In re Railroad Commissioners*, 15 Nebr., 679] is not a decision in the technical sense of the term. But it represents, nevertheless, the best judgment of the members of the court upon a matter likely to come before them at some time for adjudication. It has been acquiesced in and accepted by every department of the government, and by the people, as a guide of conduct and a rule of action. To discredit it now would be to open Pandora's box, and turn loose a brood of evils, without the means at hand to cope successfully with them. This court on several occasions has taken jurisdiction of causes and decided controversies involving large interests on the assumption that the act of 1887 was a valid and enforceable law. See *State v. Fremont, E. & M. V. R. Co.* 22 Nebr., 313, 23 Nebr., 117; *State v. Missouri P. R. Co.*, 29 Nebr., 550; *Chicago B. & Q. R. Co. v.*

*State,* 50 Nebr., 399." Lastly, in the case of *State v. Eskew,* 64 Nebr., 600, it is held: "The act of 1887 imposing the duties of labor commissioner on the governor of the state, and providing for the appointment of a special deputy to assist in discharging them, is not in violation of section 26, article 5, of the state constitution." Commissioner HASTINGS, who wrote the opinion, says: "The form of the act of 1887, 'To provide and continue a bureau of labor and industrial statistics and define the duties of its officers' (Session Laws, 1887, ch. 47), was unquestionably adopted to avoid the provisions of the state. constitution (sec. 26, art. 5) that no other executive state office should be continued or created, and that the duties devolving upon officers not provided for by the constitution should be performed by the officers therein created. The objection to the act is that it authorizes the governor, who is named as commissioner, to perform his duties, as set forth in the act, by deputy. It amounts to a contention that the authorization of deputies for the state officers, named in the constitution, is prohibited. The statement of the proposition seems to carry with it its own refutation. The practice of employing deputies in such offices has not arisen since the adoption of our constitution of 1875. It was certainly well known to the distinguished men who drafted that instrument, as well as to the voters to whom it was submitted. If they had meant to forbid any such practice, they would have done so in direct terms. The objection that the act is unconstitutional because the duties provided in it may be performed by deputies, can not be sustained."

It is urged that because we decided in the case of *State v. Cornell,* 60 Nebr., 276, that the deputy food commissioner is an officer of the state government and not a mere employee, that this is in effect a decision that a new executive office has been attempted to be created in violation of the constitution. That decision, we think, goes no further than to say that the deputy food commissioner is an officer of the state government, the same as any other dep-

uty to other state executive officers, within the purview and meaning of section 19, article 3, of the constitution relative to appropriations for the salary of the officers of the government. The deputy food commissioner may very properly be an officer of the state government as distinguished from an employee, but yet not be an executive officer who is not recognized by the constitution. We therefore conclude that the act in question is not void because of its supposed conflict with the provisions of the section of the constitution quoted.

It is also argued that the act under which the defendant was convicted violates section 11, article 3, of the constitution, declaring that "no bill shall contain more than one subject." The argument is grounded on the theory that the part of the act which attempts to make an appropriation for the salary of the deputy food commissioner is a distinct and different subject from the main one contained in the act. We can not so regard it. An act may require an appropriation for its enforcement, and may very properly include the chief legislation, and the appropriation to carry it into effect, all as parts of one general subject. This is prohibited only where the appropriation is for the salary of an officer of the state government, which the constitution says shall contain no provision on any other subject than that of making the appropriation. While the part of the act making the appropriation has been declared void, it was not because it contained different and distinct subjects, but because of the provisions of the constitution last referred to. Were it not for this provision, the act would doubtless have been held valid in all its parts, notwithstanding the other provisions of the constitution to the effect that no bill shall contain more than one subject.

It is also urged that because a part of the act has been declared invalid, the whole must fall, on the proposition that the invalid part was an inducement to the passage of the remainder. We are not impressed with the force of this argument. The act is complete, symmetrical and perfect in all its parts, without an appropriation for the

salary of the deputy food commissioner.  Nor can we be-
lieve that the attempted appropriation of the salary was
an inducement to the passage of the act.  The legislature
doubtless, in its wisdom, regarded such an act as necessary
for the welfare of the citizens of the state, and the appro-,
priation of the salary of the deputy food commissioner was
merely an incident, an ill-advised attempt to provide by
the same act compensation for the services of the deputy
food commissioner, when by the constitution, such an ap-
propriation should be contained in an act devoted ex-
clusively to the subject of appropriations.  In *Scott v.
Flowers,* 61 Nebr., 620, 622, it is held that where there is
a conflict between an act of the legislature and the con-
stitution, the statute must yield to the extent of the re-
pugnancy, but no further; and if the residue is intelligible,
complete, and capable of execution after striking out the
invalid part, it will be upheld and enforced except in cases
where it is apparent that the rejected part was an induce-
ment to the adoption of the remainder.

It can not, we think, be said that the appropriation part
of the act which has been held invalid was, in any view of
the subject, a material factor or inducing element to the
general legislation enacted by the legislature, resulting in
the creation of the law now under consideration.  The
judgment pronounced against the defendant is under the
provisions and in pursuance of validly enacted legisla-
tion, and should therefore be allowed to stand.  The judg-
ment is accordingly

                                        AFFIRMED.

NOTE.—*Constitution.—Limitation on Number of State Officers.—Decisions
of Court Thereon.*—The proper construction to be placed upon the
constitutional restriction of the number of officers, has been a
mooted question until the filing of this opinion.  Hence this opinion
marks an epoch.  One party of strict constructionists have main-
tained these restrictions to be absolute—no state officer other than
those mentioned in the constitution.  They have reasoned that the
constitution should be interpreted by the circumstances under which
it was adopted and the history of the times.  At the adoption of
the constitution, the state did not contain to exceed one-eighth of
its present population; and the terrible scourge of the Rocky Moun-

Merrill v. State.

tain locust had left Nebraska in the condition that Egypt was left
by the Mosaic locust. It was argued, the restriction as to the num-
ber and the salary of officers was to save expense to the taxpayers.

On the other hand it was argued that the constitutional convention
must have recognized the necessity for official arms; that a police-
man was a state officer (*Newport v. Horton*, 22 R. I., 196, 50 L. R. A.,
330); that the warden of the penitentiary, the superintendents of the
several asylums and the chancellor of the university were, all of
them, state officers; that the policeman, the warden and the super-
intendents were arms of the chief executive, whose duty under the
constitution required him to *take care* that the laws were faithfully
executed, but who could not be expected to manually perform the
duties of an inferior functionary.

The strict constructionists replied that the latter construction
would enable the legislature to create offices *ad infinitum*, and, by
making the governor a second Briareus, defeat the very purpose of
the constitutional restriction.

The decisions bearing upon this point, are interesting.

*Railroad Commissioners.*—The legislature has no power under the
constitution to create railroad commissioners. The supervision of
railroads by commissioners would be proper, but the power must
be conferred on executive officers already existing. *In re Railroad
Commissioners*, 15 Nebr., 679.

The creation of the board of transportation and the defining of
its powers by the legislature is not in conflict with section 26, article
5, of the constitution, which forbids the legislature to create any
executive state office. *Nebraska Telephone Co. v. Cornell*, 59 Nebr., 737.

*The Word "Clerk."*—"There shall be no allowance for clerk hire in
the offices of the superintendent of public instruction and [the]
attorney general." Constitution, art. 5, sec. 24. In construing this
part of the constitution a judge who was a member of the convention
which framed that constitution, defines the word clerk as "a person
employed in an office, public or private, for keeping records or
accounts"; and the court held that the word did not include a dep-
uty, an assistant or a stenographer. *In re Appropriations for Deputies,
etc.*, 25 Nebr., 662, 669.

*Supreme Court and Its Officers.*—In determining a question of the
power of the legislature as to fixing the number of district judges,
MAXWELL, C. J., held that section 13, article 1, of the constitution,
that "All courts shall be open, and every person, for any injury done
him in his lands, goods, person, or reputation, shall have remedy by
due course of law, and justice administered without denial or delay,"
would be meaningless unless the legislature was clothed with power
to furnish the necessary tribunals for the prompt disposition of
cases pending in the courts. *In re Groff*, 21 Nebr., 647, 661. This,
however, is a *dictum.*

The constitution of Nebraska provides: "There shall be appointed
by the supreme court a reporter, who shall also act as clerk of the
supreme court, and librarian of the law and miscellaneous library

of the state." Art. 6, sec. 8. By an act approved June 24, 1867 (General Statutes, 1873, p. 990), the office of state land commissioner was created. The duties were imposed on the state auditor and the salary fixed at $1,000. It was claimed that the constitutional limitations repealed the statutes, and the auditor could not draw this salary after the adoption of the constitution of 1875. But the supreme court held otherwise. *State, ex rel. Weston, v. Liedtke*, opinion by Cobb, J., filed January 8, 1880. See Complete Record D, pages 333-336. This opinion was never published in the reports. But on the strength of it Frederick A. Liedtke, auditor, paid Guy A. Brown, reporter and *ex-officio* clerk and librarian, a salary as librarian. But the supreme court held in another case that expenses incurred by the reporter in preparing copy, reading proof, and packing and shipping are not properly chargeable against the appropriation made by the legislature for the payment of said volumes; the salary paid to the reporter, is exclusive of any and all modes of compensation for work on the reports. *In re Brown*, 15 Nebr., 688. To steer between Scylla and Charybdis (the two last cases cited), it was the practice, for twelve years, to appoint a man deputy librarian, and then have him act as court reporter. No clerk since Guy A. Brown has given personal attention to editing the reports.

The functions of the supreme court·commissioners were held constitutional. *In re Supreme Court Commissioners*, 37 Nebr., 655; *Randall r. National Building & Protective Union of Minneapolis*, 43 Nebr., 876. —W. F. B.