STATE, EX REL. RAYMOND H. WALKER, APPELLANT, V. BOARD
OF COMMISSIONERS FOR EDUCATIONAL LANDS AND FUNDS
ET AL., APPELLEES.

3 N. W. (2d) 196

FILED MARCH 20, 1942.   No. 31295.

*Sterling F. Mutz,* for appellant.

*Walter R. Johnson, Attorney General,* and *Edwin Vail,*
contra.

Heard before SIMMONS, C. J., ROSE, PAINE, CARTER, MESS-
MORE and YEAGER, JJ.

YEAGER, J.

As pleaded in the petition, this is an action by the state of
Nebraska on relation of Raymond H. Walker, plaintiff and
appellant, against the board of commissioners for educa-
tional lands and funds and the individual members of the

board, and the state board of equalization and assessment and the individual members of this board, defendants and appellees.

The petition sets forth that Raymond H. Walker is a resident, inhabitant, citizen and taxpayer of the state of Nebraska and of the public school district of the city of Lincoln; that he has children of school age attending the public schools, and that the action is brought on behalf of the said Walker and all others similarly situated, and all public school districts which are beneficiaries of the permanent school trust fund of the state of Nebraska.

The petition sets forth that demand was made upon the attorney general that he institute the action, but such demand was refused.

The action as pleaded is, first, to require the board of commissioners for educational lands and funds to make accounting of the permanent school trust fund of the state, in which fund it is charged that shortages exist, and then certify such shortages to the state board of equalization and assessment; and, second, that mandamus issue requiring that the said state board of equalization and assessment make provision for a levy of taxes to take care of and replace the shortages in the permanent school trust fund. Known shortages in the amount of $269,824 were alleged which with interest would amount to $668,542.28. It was further alleged that the known and the unascertained shortages would exceed $2,000,000, all of which occurred prior to the incumbency of the individually named defendants.

To the petition the defendants separately demurred. The ground of the demurrers was that the petition did not state facts sufficient to constitute a cause of action. The demurrers were sustained and, the plaintiff, having elected to stand on his petition, the petition was dismissed. From this dismissal the plaintiff has appealed.

To an understanding of the matter presented, an examination of certain constitutional provisions relative to the creation of the board of commissioners for educational lands

and funds, its functions, and the accumulation and creation of the lands and funds to be administered by the board and also the matter of title to such lands and funds is required. It is necessary further to examine certain enactments of the congress of the United States.

On May 30, 1854, an act of congress was approved, the purpose of which was to permit the organization of the territories of Nebraska and Kansas. Section 16 of the act (10 U. S. St. at Large, p. 283) is as follows: "And be it further enacted, that when the lands in the said territory shall be surveyed under the direction of the government of the United States, preparatory to bringing the same into market, sections numbered sixteen and thirty-six in each township in said territory shall be, and the same are hereby, reserved for the purpose of being applied to schools in said territory, and in the states and territories hereafter to be erected out of the same." As will be observed, sections sixteen and thirty-six of each township, were to become school-lands after survey and before organization. After organization into territories or states the lands were to become school-lands of the territories or states.

By act of congress, approved April 19, 1864 (13 U. S. St. at Large, p. 47), which was the act enabling Nebraska to gain statehood, sections sixteen and thirty-six of each township were granted to the state for support of common schools, except in cases where sales had been made, and in that event other lands equivalent in area, in subdivisions of not less than quarter-sections, were granted in lieu of the lands sold (sec. 7). Further, by the act it was provided that 5 per cent. of the proceeds of sales of all public lands lying within the state which had been or would be sold by the United States prior to or subsequent to the admission of Nebraska into the Union, less incidental expenses, should be paid to the state for the support of the common schools (sec. 12).

Nebraska was admitted into the Union on March 1, 1867, and assumed the privileges and duties of statehood, including those imposed by the congressional enabling acts which

included the acceptance of the lands and funds for the support of the common schools of the state.

For the evident purpose of preserving and protecting the lands and funds thus granted to the state by congressional act, there was written into the Constitution of 1866, or the first Constitution, the following provision: "The principal of all funds arising from the sale, or other disposition of lands or other property, granted or intrusted to this state for educational and religious purposes, shall forever be preserved inviolate and undiminished; and the income arising therefrom shall be faithfully applied to the specific objects of the original grants or appropriations. The legislature shall make such provisions by taxation or otherwise, as, with the income arising from the school trust fund, will secure a thorough and efficient system of common schools throughout the state; but no religious sect or sects shall ever have any exclusive right to, or control of, any part of the school funds of this state." Const. 1866, art VII, sec. 1.

By the adoption of the Constitution of 1875 the Constitution of 1866 was amended with regard to school-lands and funds, their uses, and supervision and control thereover. The pertinent provisions are sections 1, 2, and 3, art. VIII, and they are the following:

"The governor, secretary of state, treasurer, attorney general, and commissioner of public lands and buildings shall, under the direction of the legislature, constitute a board of commissioners for the sale, leasing, and general management of all lands and funds set apart for educational purposes, and for the investment of school funds in such manner as may be prescribed by law.

"All lands, money, or other property granted, or bequeathed, or in any manner conveyed to this state for educational purposes, shall be used and expended in accordance with the terms of such grant, bequest, or conveyance.

"The following are hereby declared to be perpetual funds for common school purposes, of which the annual interest or income only can be appropriated, to-wit: First.

Such per centum as has been, or may hereafter be, granted by congress on the sale of lands in this state. Second. All moneys arising from the sale or leasing of sections number sixteen and thirty-six in each township in this state, and the lands selected, or that may be selected in lieu thereof. Third. The proceeds of all lands that have been, or may hereafter be, granted to this state, where, by the terms and conditions of such grant, the same are not to be otherwise appropriated. Fourth. The net proceeds of lands and other property and effects that may come to the state, by escheat or forfeiture, or from unclaimed dividends, or distributive shares of the estates of deceased persons. Fifth. All moneys, stocks, bonds, lands, and other property, now belonging to the common school fund."

No material change is found in the Constitution of 1920 in so far as the subject under inquiry here is concerned.

The personnel of the board of commissioners for educational lands and funds has been changed by constitutional amendment, but the functions have not been changed. The present constitutional membership of the board consists of the governor, the secretary of state, the treasurer, the attorney general and the superinendent of public instruction.

The theory of the plaintiff's petition is, and he alleges, that the board of commissioners for educational lands and funds is trustee of the permanent school-lands and funds, and it is charged with the duties and responsibilities of administering the lands and funds, of accounting to the state board of equalization and assessment of shortages in funds, to the end that that board may make provision for levy and assessment of taxes to replace such shortages, and of accounting to the plaintiff and all others similarly situated. In his presentation here the plaintiff has sought to abandon that phase of his action which would require an accounting to the state board of equalization and assessment. This present attitude dispenses with the necessity of considering in this opinion the pretended cause of action and prayer for relief against the state board of equalization

and assessment. This board and its members by this position of the plaintiff are no longer in the case. The ruling on their demurrer is conceded to be proper.

Coming then to the demurrer of the remaining defendants, we start with the legal proposition that the demurrer admits the truth of all material facts well pleaded, and the intendments and inferences that fairly and reasonably may be drawn therefrom. *American Water-Works Co. v. State*, 46 Neb. 194, 64 N. W. 711; *Van Horn v. Lincoln Sales Outlet Co.*, 127 Neb. 301, 255 N. W. 36; *Thurston County v. Farley*, 128 Neb. 756, 260 N. W. 397.

Of the material facts alleged that must be accepted here as true is the allegation that there are shortages in the permanent school fund in the approximate amount of $2,000,000. It is obvious that years ago appropriate steps should have been taken to replace, in a proper manner, these shortages if they in fact existed, for at least two reasons; first, the common schools of the state were entitled to the use of the income therefrom; and, second, it is unjust that the entire burden shall now be impressed on generations far removed from the period or periods when the shortages occurred.

Also the alleged fact that these funds are trust funds must be accepted as true. They are trust funds by virtue of the 1920. Constitution, art. VII, sec. 9. The pertinent portion of this section will be quoted later herein.

The plaintiff alleges that the board of educational lands and funds is the trustee. In the main the general demurrer of the defendants is directed to the proposition raised by this allegation. They assert in support of their demurrer that the state is the trustee and that the board is but an administrative agency whose function it is to administer the trust on behalf of the state according to law. In support of this position attention is called to the terminology of section 9, art. VII of the Constitution, *supra*, which is as follows: "All funds belonging to the state for educational purposes, the interest and income whereof only are to be used, shall be deemed trust funds held by the state,

and the state shall supply all losses thereof, that may in any manner accrue, so that the same shall remain forever inviolate and undiminished * * *."

This constitutional provision clearly demonstrates that the state is the trustee of educational lands and funds and that the defendants are in no sense trustees. *State v. Bartley,* 41 Neb. 277, 59 N. W. 907.

What then is the effect of this action? The defendants urge substantially that this is an action against the state, though nominally against one of its administrative agencies and the membership of the agency, and consequently cannot be maintained by the plaintiff herein.

Obviously, in view of the position we must take under the terms of the Constitution with regard to allegations of trusteeship of the school-lands and funds, this contention of the defendants must be sustained. There being no trusteeship in the board or its members, and the state being the trustee, and the action being for an accounting by the trustee, the petition sets forth an action against the state for an accounting, though nominally otherwise.

If this were an action to compel state officers to perform a purely ministerial duty imposed by law, there is no reason why it could not be maintained. *State v. Savage,* 64 Neb. 684, 90 N. W. 898; *State v. Bartley, supra.* This, as has been pointed out, is not such an action. The state as trustee of public property and funds cannot be sued without its consent. *Smith v. Reeves,* 178 U. S. 436, 20 S. Ct. 919; *Shoemaker v. Board of Commissioners,* 36 Ind. 175; *Bow v. Plummer,* 79 N. H. 23, 104 Atl. 35; *Pacific Livestock Co. v. Cochran,* 73 Or. 417, 144 Pac. 668; *McClellan v. State,* 35 Cal. App. 605, 170 Pac. 662; *California Securities Co. v. State,* 111 Cal. App. 258, 295 Pac. 583. The Nebraska cases of *State v. Bartley, supra,* and *State v. Savage, supra,* while not being directly in point, support this view.

There is another and perhaps even more cogent reason why this action may not be maintained. Section 9, art. VII of the Constitution, *supra,* provides that the state shall

supply all losses which shall in any manner accrue to the school funds. The Constitution, however, does not prescribe means or a method of carrying into effect this imposed obligation; hence, this provision is not self-executing.

A comprehensive definition of constitutional provisions which are not self-executing is the following from 16 C. J. S. 98, sec. 48: "Constitutional provisions are not self-executing if they merely indicate a line of policy or principles, without supplying the means by which such policy or principles are to be carried into effect, or if the language of the Constitution is directed to the legislature, or it appears from the language used and the circumstances of its adoption that subsequent legislation was contemplated to carry it into effect."

It is clear that legislation is necessary to carry into effect a restoration of the losses in the permanent school fund. No existing law is found providing a means or method of raising necessary revenue to replace losses in the fund in case any are discovered, and neither is there any law requiring a ministerial ascertainment of information relative to losses and the furnishing of such information to the legislature or to some other department of government.

In the vein and somewhat in paraphrase of some of the language used in the opinion in *State of Alabama v. Schmidt*, 232 U. S. 168, 34 S. Ct. 301, the state of Nebraska received and accepted these public school-lands as a gift, and by the adoption of the constitutional provisions relating thereto considered this a solemn and sacred obligation imposed on its public faith. The obligation is an honorary one which the courts are powerless to enforce. To perform its sacred obligation, to redeem its pledge, if the allegations of fact contained in the petition of the plaintiff with reference to shortages in the permanent school fund are true, it is the duty of the legislature, long neglected, to make provision for and to ascertain the shortages in the fund, and further by appropriate legislation to take the steps necessary to raise revenue to restore the fund to its proper condition.

180

The demurrers of the defendants were properly sustained, and the judgment of the district court was correct and is
AFFIRMED.