STATE OF NEBRASKA EX REL. EDWARD F. BOTTCHER, APPELLEE, v. HENRY H. BARTLING, SECRETARY OF THE BOARD OF EDUCATIONAL LANDS AND FUNDS, ET AL., APPELLANTS.

31 N. W. 2d 422

Filed March 19, 1948.    No. 32322.

*Walter R. Johnson,* Attorney General, *Clarence S. Beck,* and *Robert A. Nelson,* for appellants.

*Van Pelt, Marti & O'Gara,* for appellee.

Heard before SIMMONS, C. J., PAINE, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ., and WESTERMARK, District Judge.

YEAGER, J.

This is an action by the State of Nebraska on relation of Edward F. Bottcher, plaintiff and appellee, on his own behalf as an individual, a taxpayer, a citizen, and parent of children of school age, and all others similarly situated, against Henry H. Bartling, Secretary of the Board of Educational Lands and Funds of the State of Nebraska, Edward Gillette, State Treasurer, and Walter R. Johnson, Attorney General of the State of Nebraska, defendants and appellants. The action was brought agreeable to the declaratory judgment act (§§ 25-21,149 to 25-21,164, R. S. 1943). The petition seeks to have construed section 72-252, R. S. 1943, and said section as amended by section 72-252, R. S. Supp., 1945, and to have declared inoperative, unconstitutional, and void that portion thereof which provides that when the

Board of Educational Lands and Funds shall sell any bonds under its management and trusteeship for the purpose of reinvesting in United States government bonds and the sale shall be for more than the par value, the difference between the par value and the selling price shall be transferred and set up as a capital reserve to offset past capital losses. The petition contains a prayer also for general equitable relief.

Trial was had and decree rendered declaring the named act or acts of the Legislature unconstitutional to the extent prayed for by plaintiff.

From the decree the defendants have appealed. As grounds for reversal defendants say that the decision is contrary to law; that it is not sustained by evidence; and that it is contrary to the evidence.

The portion of section 72-252, R. S. 1943, to which reference must be had in the decision and determination here is the following:

"The Board of Educational Lands and Funds is hereby empowered to sell any of the bonds now held in the various funds, under its management and trusteeship, for the purpose of reinvesting the same in United States government bonds. * * * The proceeds received from the sale of any such bonds shall be reinvested in any United States government bonds under the direction of the Board of Educational Lands and Funds. * * * If the bonds in any of such funds shall sell for more than par value, the difference between the par value and the selling price of the bonds sold shall, as a part of the respective permanent funds, be considered as a capital gain and set up as a capital reserve to offset past capital losses, except that if the bonds sold were purchased at a premium and accrued interest, which was taken from the temporary or interest funds of such board, such amount, as shall be necessary to replace such entire sum so taken from said temporary or interest funds and not replaced in said funds, shall be first replaced in said temporary or interest funds from such difference, and

only the balance, if any, of such difference shall be so considered to be such a capital gain and set up as such capital reserve."

The only difference between this and the portion of section 72-252, R. S. Supp., 1945, to which reference must be had is that before "capital," which is the second last word in the quotation, appears the article "a." For all practical present purposes the Act in its original form and substance and as amended is the same. This being true there will not hereinafter be separate reference to the separate enactments.

The particular complaint of the plaintiff is that the Legislature was without constitutional power to provide that in case of sales of bonds held in the various funds under the management and trusteeship of the Board of Educational Lands and Funds for more than the par value of such bonds, the difference between the par value and the selling price should be set up as a capital reserve to offset past capital losses.

It appears from the record that since the passage of this legislation several groups of bonds have been sold under its authority at prices above the par of the bonds. In some instances a premium was paid on the purchase at the time of acquisition and in others there was not. It further appears that at the time of acquisition the par value of those purchased at a premium was paid out of the perpetual school funds but the premium was paid out of the temporary school funds.

It may be well to interpolate here that what is referred to as the perpetual school funds is that portion of the school funds which is constitutionally protected against diminution. The provisions describing it are hereinafter set out at large. The temporary school funds are those which may be used only for support and maintenance of the common schools and the provisions describing them are also hereinafter set out.

In the case of sales of bonds on which premium had been paid the money received was allocated as follows:

Amounts equivalent to accrued interest and to unearned premium were set apart for those purposes, which amounts were carried into the temporary school funds. The par value of the bonds was deducted from the remainder of the sale price and the balance thereafter was set up on the books of the Board of Educational Lands and Funds and the State Treasurer as capital gains and credited to the perpetual school funds to offset past losses.

In the case of sales of bonds on which no premium had been paid the same plan was followed except of course that nothing was credited to the temporary school funds on account of unearned premiums.

In order to ascertain whether or not the plaintiff's claim herein is just it becomes necessary to examine into the history and origin of public school funds such as are considered here together with the powers and functions of the Board of Educational Lands and Funds and of the Legislature in relation thereto.

This history has been set forth in very considerable detail in State ex rel. Walker v. Board of Commissioners, 141 Neb. 172, 3 N. W. 2d 196, and State v. Central Nebraska Public Power and Irrigation District, 143 Neb. 153, 8 N. W. 2d 841. In those cases, likewise in considerable detail, is discussed the status of school lands and funds and the limit of legislative control thereover. All of this detail will not be repeated here.

On April 19, 1864, the Act (13 U. S. St. at Large, p. 47) enabling the territory of Nebraska to gain statehood was approved. By this Act, sections 16 and 36 of each township were granted to the State for common school purposes, except in cases where sale had been made and in that event equivalent other lands were granted in lieu of the lands sold. Also by the Act it was provided that five percent of the proceeds of sales of all public lands lying within the state which had been or would be sold by the United States prior to or subsequent to the admission of Nebraska into the Union, after deduct-

ing incidental expenses, should be paid to the State for the support of the common schools.

This grant was accepted by the State of Nebraska on its admission to statehood on March 1, 1867. State ex rel. Walker v. Board of Commissioners, *supra*.

With a clear design to preserve and protect the grant of lands made by the United States to Nebraska for support of common schools and the benefits flowing therefrom, a provision was placed in the Constitution of 1866, which was the first state Constitution, in part as follows: "The principal of all funds arising from the sale, or other disposition of lands or other property, granted or intrusted to this state for educational and religious purposes, shall forever be preserved inviolate and undiminished; and the income arising therefrom shall be faithfully applied to the specific objects of the original grants or appropriations." Const., 1866, art. VII, § 1.

With an equally clear design to protect the grant and its benefits, together with other funds coming to the State for school purposes, the following was placed in the Constitution of 1875:

"All lands, money, or other property granted, or bequeathed, or in any manner conveyed to this state for educational purposes, shall be used and expended in accordance with the terms of such grant, bequest, or conveyance." Art. VIII, § 2.

"The following are hereby declared to be perpetual funds for common school purposes, of which the annual interest or income only can be appropriated, to-wit: *First.* Such percentum as has been, or may hereafter be granted by congress on the sale of lands in this state. *Second.* All moneys arising from the sale or leasing of sections number sixteen and thirty-six in each township in this state, and the lands selected, or that may be selected in lieu thereof. *Third.* The proceeds of all lands that have been, or may hereafter be granted to this state, where, by the terms and conditions of such

grant, the same are not to be otherwise appropriated. *Fourth.* The net proceeds of lands and other property and effects that may come to the state, by escheat or forfeiture, or from unclaimed dividends, or distributive shares of the estates of deceased persons. *Fifth.* All moneys, stocks, bonds, lands, and other property, now belonging to the common school fund." Art. VIII, § 3.

These sections appear without change in our present Constitution as sections 2 and 3, article VII.

By the Constitution of 1875 a board of commissioners was set up for control of the sale, leasing, and general management of all lands and funds set apart for educational purposes, and for the investment of school funds in such manner as should be provided by law. Const., 1875, art. VIII, § 1. There has been constitutional change in the components of this board but no change in its function. Const., art. VII, § 1.

Sections 2 and 3, article VII, of the Constitution, contain the limits within which the Legislature may act in its direction of this board of commissioners in the sale, leasing, and general management of the lands and funds set apart for educational purposes, and for the investment of school funds. Of course they are also a limitation upon the power of the board to act. State ex rel. Walker v. Board of Commissioners, *supra;* State v. Central Nebraska Public Power and Irrigation District, *supra;* State v. Platte Valley Public Power and Irrigation District, 147 Neb. 289, 23 N. W. 2d 300.

The original source of the funds used in the purchase of the bonds which were sold at a profit is not ascertainable from the record but it is clear that they were funds in the hands of the Board of Educational Lands and Funds for the support of the common schools. It also appears that the funds so invested were what is declared by section 3, article VII, to be perpetual funds for common school purposes concerning which the same section of the Constitution provides that only the annual

interest or income can be appropriated for support and maintenance of schools.

These funds were not only perpetual funds but trust funds and in case of loss therefrom the State is under a constitutionally imposed obligation to replace the same in case of loss on any account or for any reason.

"All funds belonging to the state for educational purposes, the interest and income whereof only are to be used, shall be deemed trust funds held by the state, and the state shall supply all losses thereof, that may in any manner accrue, so that the same shall remain forever inviolate and undiminished; * * *." Const., art. VII, § 9. See State ex rel. Walker v. Board of Commissioners, *supra;* State v. Central Nebraska Public Power and Irrigation District, *supra;* State v. Platte Valley Public Power and Irrigation District, *supra.*

The plaintiff herein substantially contends that the provision complained of in section 72-252, R. S. Supp., 1945, and hereinbefore pointed out, is unconstitutional and void for the reason that it is violative of the duty of the State imposed by section 9, article VII, of the Constitution, to supply all losses that may accrue in funds belonging to the State for educational purposes, the interest and income only of which are to be used, and for the further reason that it is contrary to the general obligation of the State as trustee to protect the res of the trust.

The defendants do not contend that the considered bonds and the proceeds obtained from sale are not trust funds.

In one of their propositions of law they make the contention that the difference between the cost to the State with accrued interest and the selling price of the bonds is to be considered as capital gain and set up as a capital reserve to offset past capital losses.

The proposition fails to find support in the citations found in the brief. They do sustain the proposition that this difference generally must be considered capital

gain but have no reference to reserve to offset loss.

In another proposition of law the defendants contend that in cases where the profit on sale of bonds is brought about because of the fact that the bonds were tax-exempt the profit must be considered as income and credited to the temporary school funds for support and maintenance of the common schools.

The authorities generally do not sustain the contention of defendants in this respect. Generally when bonds, securities, or other properties of a trust are sold at a profit the profit becomes a part of the principal and may not be considered as income. Restatement, Trusts, § 233 (b), p. 682; 4 Bogert, Trusts & Trustees, § 823, p. 2393; 2 Scott, Trusts, § 233.1, p. 1258; Estate of Gartenlaub, 198 Cal. 204, 244 P. 348, 48 A. L. R. 677; Thomson's Estate, 11 Pa. Co. 198.

There are recognized exceptions to this general rule. If the trust is a manufacturing or merchandising trust involving buying and selling for profits, the profits are to be considered as income. Restatement, Trusts, § 233 (c), p. 683.

The other instance is in the matter of an exaction of income tax. Capital gains of trusts are considered as income for income tax purposes. Merchants' Loan & Trust Co. v. Smietanka, 255 U. S. 509, 41 S. Ct. 386, 65 L. Ed. 751, 15 A. L. R. 1305; Commissioner of Internal Revenue v. Simmons Gin Co., 43 F. 2d 327; Brown v. Commissioner of Corporations & Taxation, 242 Mass. 242, 136 N. E. 188.

Even though the contention that these profits were, properly speaking, income it would avail defendants nothing, first, for the reason that no such issue was presented by the pleadings or by any theory supported by evidence or legal principle on the trial of the case, and second, as income they could no more be set up to offset past capital losses than if they were considered as capital gain.

By the provision complained of the Legislature sought

to relieve the State from its constitutional obligation to supply all losses to the perpetual school funds. We have not been cited to any precedents and we think there are none which would permit the Legislature in any such manner to override and render for naught the will of the people as expressed through the Constitution. It is fundamental that in case of a conflict between the Constitution and a legislative enactment the statute must give way to the Constitution. The Constitution is the paramount law. Where there is a conflict between an act of the Legislature and the Constitution of the State, the statute must yield to the extent of the repugnancy. Scott v. Flowers, 61 Neb. 620, 85 N. W. 857; Merrill v. State, 65 Neb. 509, 91 N. W. 418; Logan County v. Carnahan, on rehearing, 66 Neb. 693, 95 N. W. 812; Koepke v. State, 68 Neb. 152, 93 N. W. 1129; State v. Insurance Co. of North America, 71 Neb. 320, 100 N. W. 405, on rehearing, 71 Neb. 335, 102 N. W. 1022; State v. McCoy, 145 Neb. 750, 18 N. W. 2d 101.

To permit that which the Legislature has attempted to authorize by the provision complained of would be to permit the State to be relieved of its obligation to restore losses to the perpetual school funds by a mere bookkeeping arrangement by the Board of Educational Lands and Funds over which funds the Legislature has no control and in which it and the State have no interest except in a supervisory capacity, and from which the State may not profit.

The State under the provisions of the Acts of Congress and the Nebraska Constitution herein referred to may not claim benefits to itself for profits flowing to trust funds of which it is trustee and thus relieve it of its constitutional obligation as a state to keep inviolate such trust funds.

The provision of the Act in question, if a valid exercise of legislative power, would permit the offset of losses occasioned by breach of trust against profits as well as

losses not involving breach of trust. No different treatment is accorded the one than the other.

Even in the absence of constitutional obligation upon the trustee to restore funds, as is true here, a trustee would not be permitted to offset losses occasioned by his breach of trust against profits and no valid statute could be enacted legalizing any such transaction.

The rule in this connection is well stated in Restatement, Trusts, § 213 (b), p. 595, as follows: "If the trustee is liable for a loss occasioned by a breach of trust in respect of one portion of the trust property, he cannot reduce the amount of his liability by deducting the amount of gain which has accrued with respect to another part of the trust property through another and distinct transaction which is not a breach of trust."

This proposition is fundamental in the law of trusts and it would therefore be necessary, even in the absence of constitutional obligation of the State to supply the losses to the perpetual school funds, to say that the provision permitting offset of past losses against profits would not be a valid exercise of legislative power.

A grant of specific power by the Legislature which is contrary to and out of harmony with the fundamental law is unconstitutional and void. Scott v. Flowers, *supra;* Tiernan v. Rinker, 102 U. S. 123, 26 L. Ed. 103.

It is therefore the opinion of this court that the following from section 72-252, R. S. Supp., 1945: "If the bonds in any of such funds shall sell for more than par value, the difference between the par value and the selling price of the bonds sold shall, as a part of the respective permanent funds, be considered as a capital gain and set up as a capital reserve to offset past capital losses, except that if the bonds sold were purchased at a premium and accrued interest, which was taken from the temporary or interest funds of such board, such amount, as shall be necessary to replace such entire sum so taken from said temporary or interest funds and not replaced in said funds, shall be first replaced in said

temporary or interest funds from such difference, and only the balance, if any, of such difference shall be so considered to be such a capital gain and set up as such a capital reserve" is and is declared to be an invalid exercise of legislative power, and that it is unconstitutional, null, and void; that all acts thereunder and pursuant thereto should be and they are declared to be void and of no effect; and that the defendants and each of them should be and they are hereby directed to correct the record and adjust the public school funds so as to conform herewith.

The decree of the district court is affirmed.

AFFIRMED.