REQUESTED BY: David Bomberger, State Investment Officer
This is in response to the joint request of the State Treasurer and the State Investment Officer for an opinion of the Attorney General relating to the distribution of proceeds of investments by the State Investment Officer to eight endowment funds established by law. The questions are asked in connection with the responsibilities of the Nebraska Investment Council and the State Investment Officer for the investment and reinvestment of all state funds pursuant to the Nebraska State Funds Investment Act, Neb. Rev. Stat. §§ 72-1261 to 72-1269 (2003 and Cum. Supp. 2006). The interest of the State Treasurer is related to his duties as the legal custodian of state funds and investments. See i.e. Neb. Rev. Stat. §§ 80-401 (2003) and 85-170 (Cum. Supp. 2006). In light of these duties and responsibilities, two questions are presented:
 1. Whether interest, premiums, dividends, capital gains, or other income may be distributed for each of the eight funds . . .?
 2. Whether realized and unrealized gains are to be treated differently for purposes of question 1 above?
At the outset, we point out that the rules governing the allocation as between capital and income on dividends on capital stock are numerous and complicated.[1] For this reason, only a brief summary for treatment of receipts is set forth in response to the questions you have presented. Generally, the amounts distributable to the endowment funds are controlled by the constitutional and/or statutory provisions establishing the funds. Thus, interest, premiums, dividends, capital gains, or other income should be allocated between income and principal for distribution purposes in accordance with the constitutional or statutory provisions. In the event the underlying constitutional and statutory provisions provide no or insufficient direction, the question(s) must be determined in accordance with other applicable statutes or decisional law.
The state investment officer is a fiduciary with respect to investments for the endowment funds and the standard of care is commonly termed the "prudent man" rule as set forth in Neb. Rev. Stat. § 72-1246
(2003). As a fiduciary, the state investment officer should be guided by the provisions of the Uniform Principal and Income Act, Neb. Rev. Stat. §§ 30-3116 to 30-3149 (Cum. Supp. 2006) in the absence of guidance by the constitutional and statutory provisions establishing the funds.[2]
With these concepts in mind, your question(s) for each of the endowment funds are addressed below.
I. NEBRASKA VETERANS' AID FUND
The Nebraska Veterans' Aid Fund ("Fund") was established under the provisions of Neb. Rev. Stat. § 80-401 (2003) and is administered by the Board of Educational Lands and Funds. By express statutory provisions, assets of the Fund are invested in bonds or notes of the U.S. Government, the State of Nebraska, and certain political subdivisions of the State. Accordingly, the primary sources of income would be interest earned on the debt instruments. The interest earned is to be paid by the Investment Council to the Veterans' Aid Income Fund except the amount necessary for amortization of "premium bond purchases." Section 80-401
further states that capital gains (amounts realized from discounts on bond or note purchases) are to be reinvested by purchase of additional bonds.
In view of the express statutory mandates, the interest income, net of premium amortization and pro rata management fees, should be distributed to the Income Fund.[3] Capital gains, whether realized or unrealized, would remain in the Fund and be reinvested as principal. There would be no dividend income since the principal of the Fund is invested in debt instruments. You have stated that the current distribution practice of the Investment Council ". . . is that net investment interest and income are calculated and distributed quarterly." We believe the distribution practice is consistent with statutory requirements applicable to the Fund.
II. NEBRASKA CULTURAL PRESERVATION ENDOWMENT FUND
Any funds in the Nebraska Cultural Preservation Endowment Fund ("Fund") are invested by the State Investment Officer in accordance with the Nebraska Capital Expansion Act, Neb. Rev. Stat. §§ 72-1261 to 72-1269
(2003 and Cum. Supp. 2006), and the Nebraska State Funds Investment Act, Neb. Rev. Stat. §§ 72-1237 to 72-1260 (2003 and Cum. Supp. 2006).
The investment earnings from the Fund are credited to the Nebraska Arts and Humanities Cash Fund pursuant to Neb. Rev. Stat. §82-331(5)(1999). The statutes establishing the Endowment Fund do not define the term, "investment earnings", to delineate between different sources of income that are distributable to the Cash Fund by the State Investment Officer. In construing the meaning of the term, "investment earnings", certain rules of interpretation must be considered. Absent anything to the contrary, statutory language is to be given its plain and ordinary meaning. First Data Corp. v. State Dept. of Revenue, 263 neb. 344, 639 N.W.2d 898 (2002); Sharkey v. Board of Regents of University of Nebraska, 260 Neb. 166, 615 N.W.2d 889 (2000). The word "earnings" is commonly accepted to mean "money made by investment or enterprise; profit." WEBSTER'S NEW UNIVERSAL UNABRIDGED DICTIONARY (2d Ed. 1983). In application of these rules of interpretation, all interest, dividend and premium income as well as realized capital gains would be distributable to the Cash Fund as investment earnings.[4]
The current distribution practice of the Investment Council regarding the Endowment Fund is that net investment interest and income are calculated, reinvested, and distributed when directed. The Nebraska Arts Council administers and distributes the Cash Fund pursuant to Neb. Rev. Stat. § 82-332 (1999). For these reasons, we believe the distribution practices of the Nebraska Investment Council are consistent with statutory requirements.
III. BESSEY MEMORIAL FUND
The Bessey Memorial Fund ("Fund") constitutes a memorial fund established under the provisions of Neb. Rev. Stat. §§ 85-168 (1999) and85-171 (Cum. Supp. 2006) for the benefit of widows and dependents of deceased professors who acceptably served the University of Nebraska for a period of not less than twenty-five years. In brief summary, the Board of Regents of the University of Nebraska implements the purposes for which the Fund was established and is empowered to accept gifts and bequests of money or property for the Fund pursuant to Neb. Rev. Stat. §§ 85-167 and 85-169 (Cum. Supp. 2006). Any money in the fund available for investment is invested by the State Investment Council under Neb. Rev. Stat. § 85-168 (1999). Money is paid out by the State Treasurer only at the Direction of the Board of Regents pursuant to Neb. Rev. Stat. § 85-170 (Cum. Supp. 2006). Income of the Fund derived annually from the Fund is distributed by the Board of Regents to the intended beneficiaries pursuant to Neb. Rev. Stat. § 85-171. Capital gains are generally viewed as principal and not distributed as income. In any event, we believe that it is the responsibility of the Board of Regents to allocate receipts of the Fund between income and principal as mandated by §§ 85-170 and 85-171.
The current distribution practice of the Investment Council is that net investment interest and income are calculated and distributed quarterly. The distribution practice is acceptable if the practice is in accordance with the direction of the Board of Regents since money is only paid out by the State Treasurer at the direction of the Board under the express provisions of § 85-170.
IV. NEBRASKA ENVIRONMENTAL ENDOWMENT FUND
The Nebraska Environmental Endowment Fund is established under the provisions of Neb. Rev. Stat. § 81-15,174.01 (Cum. Supp. 2006). The governing body of the Fund, the Nebraska Environmental Trust Board, is created under the provisions of the Nebraska Environmental Trust Act, Neb. Rev. Stat. §§ 81-15,167 to 81-15,176 (1999 and Cum. Supp. 2006) to implement the purposes of the Act. Among the Board's duties is the power to make an annual allocation from a cash fund, the Nebraska Environmental Trust Fund, to the Endowment Fund and to make allocations for projects which conform to the environmental categories under criteria established by the Board pursuant to Neb. Rev. Stat. §§81-15,175 and 81-15,176 (Cum. Supp. 2006). The State Investment Officer has responsibility for the investment of monies for both the Trust Fund and the Endowment Fund under the express provisions of §§ 81-15,174 and81-15,174.01 (Cum. Supp. 2006). Importantly, § 81-15,174.01 in relevant part states:
 Allocations received by the Nebraska Environmental Endowment Fund from the Nebraska Environmental Trust Fund shall not be reallocated by the board, but shall remain invested. Any interest income earned by the Nebraska Environmental Endowment Fund shall be available for allocation by the board as provided in section 81-15,175.
(Emphasis added).
The stated distribution practice of the Nebraska Investment Council regarding the Endowment Fund is that net investment interest and income are calculated but reinvested. The current distribution practices of the Investment Council are consistent with statutory requirements. All sources of investment income of the Endowment Fund are reinvested subject to allocation of interest income by the Board for projects described in §§ 81-15,175 and 81-15,176. In view of the express language of § 81-15,174.01 that allocations from the Trust Fund shall not be reallocated, except interest income, the Legislature has manifested its intent that only the interest income may be allocated for environmental projects. In Op. Att'y Gen. No. 05001 (Jan. 12, 2005), it was concluded that "[t]he legislature intended the Trust Board to invest the principle from the Fund and use the income from those investments for its allocations, whether it be interest income, or capital gains or dividends." Additional information consisting of the distribution practices of the Nebraska Investment Council considered together with the statutory provisions now lead us to a different conclusion. That is, only interest income may be allocated by the Trust Board under the express provisions of § 85-15,174.01.
Legislative intent is the cardinal rule in the construction of a statute. Foote Clinic v. City of Hastings, 254 Neb. 792, 580 N.W.2d 81
(1998). And, it is the court's duty to give effect to the purpose and intent of the Legislature as ascertained from the statute itself, considering the entire language of the statute in its plain, ordinary, and popular sense. Cox Cable v. Dept. of Revenue, 254 Neb. 598,578 N.W.2d 423 (1998). The term "interest income" is universally understood in investment and finance vernacular to mean interest earnings on bank accounts, bonds, notes, bills, and similar debt obligations and the term is commonly understood to exclude other classes of investment receipts such as stock dividends, premiums, and capital gains.[5] Other recognized authorities recognize interest income as interest on bonds and notes and securities and obligations as distinguished from other income and profits on the sale or exchange of any part of a principal asset.
III A Scott, Trusts, 233.1 p. 9.
The fact that § 81-15,174.01 provides that allocations received from the Fund shall not be reallocated, but remain invested, serves as further indicia that the Legislature intended that only interest income be allocated by the Board. For these reasons, we believe that interest income available for allocation by the Board pursuant to § 81-15,174.01
means interest from bonds, notes, bank accounts and similar debt instruments and does not include other classes of investment income. It is recommended that the statutes be clarified through legislative amendment if it is intended that other classes of investment income or principal be available for allocation by the Board for environmental projects.
V. PERPETUAL SCHOOL FUND
As we understand, the endowment fund you have referred to as the Perpetual School Fund consists of two funds. The Permanent School Fund is the fund established by Article VII, Sections 7, 8 and 9 of the Nebraska Constitution and described in Neb. Rev. Stat. § 79-1035.01
(2003). The principal of the Permanent School Fund is invested in perpetuity in trust by the State. A holding fund, the Temporary School Fund, is established under Neb. Rev. Stat. § 79-1035.02 (2003) to which the interest, dividends, any other income from the Permanent School Fund, the net income from school lands, and money from all other sources are credited.
The current distribution practice of the Investment Council for the Perpetual School Fund is that the net investment interest and income are calculated and distributed. We believe the current distribution practices are consistent with constitutional and statutory requirements. The question you present is whether interest, premiums, dividends, capital gains, or other income may be distributed.
Reportedly, the receipts from investments have been allocated between income and principal with capital gains added to the principal of the Permanent School Fund for reinvestment. Premiums are gains realized from the sale maturity or other disposition of a note, bond or other debt instrument and added to the Permanent School Fund and reinvested as principal. Interest and stock dividends are allocated to income and added to the Temporary School Fund for distribution. This practice is consistent with constitutional and statutory requirements.
The Nebraska Supreme Court, in State ex rel. Bottcher v. Bartling, et al., 149 Neb. 491, 31 N.W.2d 422 (1948) addressed the specific question whether excess interest amounts from bonds necessary to amortize premiums paid on the bonds should be available for distribution or treated as capital gains and reinvested. In addressing the question the Court observed:
 Generally, when bonds, securities or other properties of a trust are sold at a profit the profit becomes a part of principal of and may not be considered income. Restatement, Trusts, § 233(b), p. 682; Bogert, Trusts and Trustees, § 823, 2 Scott, Trusts, 233.1, p. 1258; In re Estate of Gartenlaub, 198 Cal. 204, 244 p. 348, 48 A.L.R. 677; In re Thomson's Estate, 11 Pd. Co. Ct. R. 198.
Id. at 498, 31 N.W.2d at 427.
The accepted rule regarding the allocation of investment receipts between income and principal is well stated as follows:
 Ordinary current receipts from the trust property are income. The income includes the return produced by capital that does not impair it, but does not include returns that represent an accretion to capital. Thus interest on bonds and on notes and other securities and obligations, ordinary dividends on shares of stock, rentals received from leases of land, farm crops, and the like, are income. (citations omitted).
On the other hand, profits on the sale or exchange of any part of principal are ordinarily principal. If the trustee of land sells the land at a profit over the inventory price or, where he has purchased land for the trust, over the purchase price, the profit is principal. So also are profits on the sale of shares of stock or other securities. . . .
III A Scott, Trusts, § 233.1, pp. 8, 9.
The trust principles enunciated in Bottcher and Scott, Trusts, relating to allocation of trust receipts are widely-accepted and applied. The principles are also delineated in the Uniform Principal and Income Act ("Act"). The term, "income", is defined in the Act in the following manner:
 Income means money or property that a fiduciary receives as current RETURN FROM A PRINCIPAL ASSET. The term includes a portion of receipts from a sale or exchange, or liquidation of a principal asset, to the extent provided in sections 30-3127 to 30-3141.
Neb. Rev. Stat. § 30-3117(4) (Cum. Supp. 2006).
The allocation between income and principal of receipts from different classes of investments (entities) is described in Neb. Rev. Stat. §30-3127 (Cum. Supp. 2006). The allocation of principal receipts is described in Neb. Rev. Stat. § 30-3130 (Cum. Supp. 2006) which states in part:
 A trustee shall allocate to principal:
 . . . (2) money or other property received from the sale, exchange, liquidation, or change in form of a principal asset, including realized profit, subject to sections 30-3127 to 30-3141.
(Emphasis added).
In view of these authorities, we believe that interest, dividends and other income such as income from school lands are added to the Temporary School Fund and available for distribution. Premiums and capital gains are principal and reinvested and thus not available for distribution.
VI. PERMANENT ENDOWMENT FUND
This endowment fund is held in two accounts established under the provisions of Neb. Rev. Stat. §§ 85-123 and 85-123.01 (1999). The two funds are the Permanent Endowment Fund and the University Trust Fund, held and managed by the Board of Regents of the University of Nebraska. The genesis of the assets of the funds are school lands donated to the State described in Article VII, §§ 1 and 8 of the Nebraska Constitution. Any money in the funds available for investment are invested by the State Investment Officer pursuant to Neb. Rev. Stat. § 85-122 (1999).
The current distribution practice of the Investment Council is that net investment interest and income are calculated and distributed quarterly. We believe the allocation of investment receipts is the same as the Perpetual School Fund. That is, interest and dividends are distributable as income. Premiums and capital gains are principal and reinvested.
VII. NORMAL SCHOOL ENDOWMENT
The Normal School Endowment Fund was established for the benefit of the state colleges and consists of certain parcels of unsold school lands and proceeds from sale of the lands described in Article VII, §§ 7 and 8 of the Nebraska Constitution and Neb. Rev. Stat. § 85-317
(1999). The Fund is intended to be perpetual in duration and income of the Fund may be distributed for support and maintenance of the state schools.
The current distribution practice of the Investment Council is that net investment interest and income are calculated and distributed. The allocation for investment receipts is the same as the Perpetual School Fund described above. That is, interest, dividends and other income such as rental income from school lands are available for distribution. Premiums, if any, and capital gains are allocable to principal and reinvested.
VIII. AGRICULTURAL ENDOWMENT FUND
The statutory basis for this particular endowment fund has not been indicated. It appears that this endowment fund is authorized and described under Article VII, § 7 and 8 of the Nebraska Constitution and the provisions of Neb. Rev. Stat. §§ 85-147 and 85-148 (1999).
The current distribution practice of the Investment Council is that net investment interest and income are calculated and distributed. The allocation of investment receipts of the Fund is the same as the allocation described above for the Perpetual School Fund. That is, interest, cash dividends and other income including rental income from school lands are available for distribution. Premiums and capital gains are principal and reinvested.
SUMMARY
The constitutional and legislative provisions establishing the endowment funds govern investment amounts that may be distributed to the funds by the Nebraska Investment Council. All investment receipts, whether income or principal, are credited to the fund from which the investment was made. See Neb. Rev. Stat. § 72-1248 (2003).
For certain fund distributions, it is necessary to distinguish between classes of investment income and between income and principal. Generally, investment receipts or amounts allocable to income include interest, dividends, and other income such as rent on lands. Investment receipts allocable to principal include premiums and capital gains, whether realized or unrealized. Receipts allocable to principal ordinarily are reinvested as principal and not distributable in the absence of constitutional or statutory authorization for that purpose.
Sincerely,
JON BRUNING
Attorney General
Fredrick F. Neid
Assistant Attorney General
APPROVED:
___________________________
Attorney General
[1] B.C. Ricketts, Annotation, Allocation between income and principal of "capital gains" dividends of mutual fund or investment trust or corporation, 98 A.L.R. 2d 511 (1964). The annotation addresses cases where shares of investment companies or mutual funds are held in the portfolios of fiduciaries, and the question arose as to the allocation as between principal and income of "capital gains" paid by the organizations.
[2] The provisions of the Uniform Principal and Income Act have application only to the extent the underlying trust terms (constitutional or statutory provisions) do not delineate between income and principal for distribution purposes. Neb. Rev. Stat. § 30-3118 (Cum. Supp. 2006).
[3] Neb. Rev. Stat. § 72-1249.02 (2003) states that "[a] pro rata share of the budget appropriated for the Nebraska Investment Council shall be charged to income of each fund managed. . . ."
[4] We do not perceive of any circumstances that permit the distribution of unrealized capital gains. In the event a sale, liquidation, or other closing transaction of an underlying capital asset does not occur, funds or monies would be unavailable for distribution.
[5] The Internal Revenue Service characterizes interest as interest received on bank accounts, loans made to others, earnings on money market funds and other sources of interest income. IRS Pub. 550 (2005).